METALLIC COMPRESSION CASTING COMPANY *vs.* FITCHBURG RAILROAD COMPANY.

In order to obtain the only available supply of water to throw upon a building on fire, it was necessary to lay a hose across a railroad. The water was applied from the hose to the fire, and had diminished and would probably have extinguished it, but servants of the railroad corporation ran a train over the hose, and severed it, and thereby cut off the water from the fire, which then consumed the building. They had notice about the hose,

and might have stopped the train to permit the hose to be uncoupled. The railroad was crossed by another at grade a few hundred feet before the place where the hose was severed; and the train was not stopped before the crossing, as required by the Gen. Sts. *c.* 63, § 93. *Held*, in an action brought by the owner of the building against the railroad corporation, (1) that the violation of the statute did not affect the defendants' liability; (2) that the firemen had a right at common law to lay the hose across the railroad; (3) that it was immaterial that they were volunteers from another town; (4) that it was immaterial that the plaintiff did not own the hose; (5) that the severing of the hose was the proximate cause of the destruction of the building; and (6) that the defendants were liable for the negligence of their servants in severing the hose.

TORT against a railroad corporation for negligently severing a hose which was laid across their track in Somerville, and thereby cutting off the supply of water from a fire which was consuming the plaintiffs' factory, and causing the destruction of the building and its contents. Trial in this court, before *Ames*, J., who with the consent of the parties withdrew the case from the jury and reported it to this court, to stand again for trial if the plaintiffs could maintain the action on the evidence reported, otherwise the defendants to have judgment. The substance of the evidence is stated in the opinion.

*R. H. Dana, Jr.*, for the plaintiffs, cited *Atkinson* v. *Newcastle & Gateshead Waterworks Co.* Law Rep. 6 Exch. 404; *Hart* v. *Western Railroad Co.* 13 Met. 99; *Safford* v. *Boston & Maine Railroad*, 103 Mass. 583; *Smith* v. *London & Southwestern Railway Co.* Law Rep. 6 C. P. 14; *Davis* v. *Garrett*, 6 Bing. 716; *Dickinson* v. *Boyle*, 17 Pick. 78; *Baltimore & Ohio Railroad Co.* v. *Thompson*, 10 Maryl. 76; *Willey* v. *Fredericks*, 10 Gray, 357; *Scott* v. *Shepherd*, 2 W. Bl. 892; *Vandenburgh* v. *Truax*, 4 Denio, 464; *Powell* v. *Salisbury*, 2 Y. & J. 391; *Gilbertson* v. *Richardson*, 5 C. B. 502; *Lynch* v. *Nurdin*, 1 Q. B. 29; *Borradaile* v. *Brunton*, 8 Taunt. 535; *Lee* v. *Riley*, 18 C. B. (N. S.) 722; *The George & Richard*, Law Rep. 3 Adm. & Eccl. 467; *Bailiffs of Romney Marsh* v. *Trinity House*, Law Rep. 5 Exch. 204; *Byrne* v. *Wilson*, 15 Irish Law, 332; *White* v. *Moseley*, 8 Pick. 356; *Saxton* v. *Bacon*, 31 Verm. 540; *Scott* v. *Hunter*, 46 Penn. State, 192; *Rylands* v. *Fletcher*, Law Rep. 3 H. L. 330; *Jones* v. *Festiniog Railway Co.* Law Rep. 3 Q. B. 733.

*T. H. Sweetser & N. St. J. Green*, (*W. S. Stearns* with them,) for the defendants, cited St. 1855, *c.* 452, § 1; Gen. Sts. *c.* 63

§§ 93, 94 ; *c.* 24, §§ 7, 26 ; Sedgwick on Damages, (5th ed.) 82, and cases cited ; Sourdat, Traité de la Responsabilité, §§ 42, 44, 105, 106 ; *Mott* v. *Hudson River Railroad Co.* 1 Robertson, 585 ; *Bailiffs of Romney Marsh* v. *Trinity House,* Law Rep. 5 Exch. 204 ; *Ryan* v. *New York Central Railroad Co.* 35 N. Y. 210 ; *Denny* v. *New York Central Railroad Co.* 13 Gray, 481 ; *Marble* v. *Worcester,* 4 Gray, 395 ; *Connecticut Insurance Co.* v. *New York & New Haven Railroad Co.* 25 Conn. 265 ; *Anthony* v. *Slaid,* 11 Met. 290 ; *Silver* v. *Frazier,* 3 Allen, 382 ; *Williams* v. *Adams,* Ib. 171 ; *Hutchins* v. *Hutchins,* 7 Hill, 104 ; *New York Academy of Music* v. *Hackett,* 2 Hilton, 219 ; *Crain* v. *Petrie,* 6 Hill, 522 ; *Lamb* v. *Stone,* 11 Pick. 527 ; *Brown* v. *Cummings,* 7 Allen, 507 ; *Waite* v. *Gilbert,* 10 Cush. 177 ; *Parsons* v. *Pettingell,* 11 Allen, 507.

CHAPMAN, C. J.   The case is reserved upon the evidence offered by the plaintiffs.   That evidence would authorize the jury to find substantially as follows :

On the 24th of January 1870, a little before midnight, the plaintiffs' manufacturing establishment was discovered to be on fire.   The buildings were situated in Somerville, about fifty feet south of the track of the Fitchburg Railroad.   Two fire engines were soon brought upon the ground, belonging to the Somerville fire department, and one from Cambridge.   Not being able to procure a supply of water otherwise, they laid the hose across the track, under the direction of the chief engineer of the Cambridge fire department, and obtained a supply from a hydrant on the north side of the track.   The water was, by means of the hose, applied to the fire, and had diminished it, and would probably have extinguished it in a short time but for the acts of the defendants.   At that time a freight train came along from the west, and though its managers had sufficient notice and warning, and might have stopped, and had no occasion for haste, they paid no attention to the hose, but carelessly passed over it with their train, and thereby severed it, and stopped the water.   They injured the hose so much that it could not be seasonably repaired ; and thereby the plaintiffs' buildings and machinery were consumed. They did not delay to give time for uncoupling the hose, which would have delayed them but a few minutes.

One of the grounds taken by the plaintiffs is, that the defendants' train did not stop before crossing the Grand Junction Railroad, and thereby violated the Gen. Sts. *c.* 63, § 93, which require that trains shall be stopped before crossing another railroad at grade. The point of this crossing was in sight of the fire, and a few hundred feet west of it. But the object of the statute was solely to prevent the collision of trains at crossings, and had no reference to the extinguishment of fires. It is not applicable to this case.

The plaintiffs further contend, that the hose was properly and rightfully laid across the track, for the purpose of aiding in the extinguishment of the fire. This the defendants deny, because they had obtained a legal title to the land occupied by their railroad. It cannot be denied that it was their property, and they had the same right to its possession that other landowners have to their lands, so far as this case is concerned. But all rights of property are subject to some limitations. No one has a right to his real estate, which is absolutely exclusive. In Cooley on Constitutional Limitations, 594, it is said that police regulations may authorize one to take, use and destroy the private property of individuals, to prevent the spread of fire, the ravages of pestilence, the advance of a hostile army, or any other public calamity. See also the authorities there cited. But we have no occasion to consider the principle further than it is settled by this court in *Taylor* v. *Plymouth*, 8 Met. 462. It is there held that the right to take private property to prevent the spread of fire exists by the common law. Chief Justice Shaw discusses the principle, and cites the authorities. We cannot doubt the soundness of the principle; and it authorized the parties engaged in extinguishing the fire in the plaintiffs' factory to lay their hose across the defendants' track.

The elaborate provisions which our statutes have made for the extinguishment of fires indicate the magnitude of the interest which the community has in preventing the spread of conflagrations; but these statutes do not supersede the common law. Their purpose is merely to enable the community to protect themselves more effectually than they could do otherwise. Thus the

organization of a fire department with officers and implements does not deprive the people of a neighborhood from obtaining an engine and hose, and crossing the neighboring lands to obtain water for stopping a conflagration, without waiting for an organization; and individuals may climb upon neighboring roofs to carry buckets of water. It is a sufficient justification, that the circumstances made such an invasion of private property reasonble and proper, in helping to extinguish the fire.

The objection of the defendants, that the officers of the fire department in Cambridge had no jurisdiction in Somerville, and could not act officially in that town, has no validity. They had a fire company organized, and an engine and hose, and were in the vicinity of the building, and they could not with propriety stand idly by, and witness the spread of a fire which they might extinguish, merely because it was beyond the town line. They had a right, as citizens, to do what they reasonably could to prevent this public calamity, whether in their own city or a neighboring town.

It is urged that upon this principle one person may enter upon the property of another for the purpose of extinguishing a fire in a small building of no importance, and where there is no danger to other buildings. Undoubtedly the principle is to have a reasonable limitation. He who enters upon the property of another takes upon himself the burden of establishing the fact that there was a just occasion for it; and in this case the plaintiffs must submit to the jury, with proper instructions, the question whether there was good cause for laying the hose across the defendants' track. All that the court can say is, that there is sufficient evidence to submit to the jury.

But assuming that the hose was properly laid across the track, yet the defendants contend that the plaintiffs have no cause of action, because the hose was not their property, nor were the men who had possession of it their servants. It is true that the hose was not their property, and the men in charge of it were not their servants. Their services were voluntary, and if they had gone away and taken the hose and engine with them, the plaintiffs would have had no legal claim against them. But we do not

think that these circumstances are material. The men and the engine were in fact furnishing water to the plaintiffs, and were thereby extinguishing the fire. They were rendering the same service to the plaintiffs as if they were hired and were using the plaintiff's hose. The defendants cut off the supply of water, and this was as really an interference with the plaintiff's possession as if they held the possession under a deed, and as if the men were laboring under a contract. The interference was tortious.

It is further contended, that no direct or immediate injury was occasioned to the plaintiffs by the act of the defendants, but that the injury was occasioned by the fire directly, and by the defendants remotely. The question of proximate cause is often involved in difficulty, by reason of the endless variety of circumstances in which injuries may occur; and the cases on the subject are very numerous. A case which much resembles the present is *Atkinson* v. *Newcastle & Gateshead Waterworks Co.* Law Rep. 6 Exch. 404. The defendants were a company incorporated to erect waterworks and supply water to the inhabitants, with the obligation to keep a certain head upon the fire plugs. They neglected to do this, and were thereby subject to a penalty. The plaintiffs' saw-mill and lumber-yard took fire; and in consequence of the defendants' neglect in respect to the head of water, the plaintiffs could not obtain a supply, and their property was burned. It was held that the defendants were liable, on the common law principle stated in Com. Dig. Action on the Case, A : " Whenever a man has a temporal loss or damage by the wrong of another, he may have an action on the case to be repaired in damages." The defendants contended that the damages were too remote, but the court held otherwise. Kelly, C. B., significantly asked, " What kind of damage can be more a proximate consequence of the want of water than the destruction by fire of a house which a proper supply of water would have saved ? " Baron Bramwell remarked that it was the immediate consequence of the proximate cause. *Couch* v. *Steel*, 3 El. & Bl. 402, was cited as decisive of this principle. Among other cases illustrating the subject of direct consequences are *Scott* v. *Shepherd*, 2 W. Bl. 892; *Gilbertson* v. *Richardson*, 5 C. B. 502; *Lee* v. *Riley*, 18

C. B. (N. S.) 722; *Dickinson* v. *Boyle,* 17 Pick. 78; *Wellington* v. *Downer Kerosene Oil Co.* 104 Mass. 64.

Other cases are cited where the damages were held to be too remote, but they are unlike the present case. The law regards practical distinctions, rather than those which are merely theoretical; and practically, when a man cuts off the hose through which firemen are throwing a stream upon a burning building, and thereupon the building is consumed for want of water to extinguish it, his act is to be regarded as the direct and efficient cause of the injury.

It is further contended that the advantage to be gained by the plaintiffs from the supply of water through the hose was merely prospective, and thus was remote. But it was not prospective, in the sense in which that word is used in the cases cited by the defendants. In respect to the extinguishment of the fire, the advantage was immediate.

It is further contended that the railroad company owed no duty to the plaintiffs in a case like this. It may be true that the company owed the plaintiffs no active duty; but it cannot be doubted that they owed the negative duty of forbearing to do an unlawful act which caused an injury. And the defendants are responsible for the act of their agents who had the control of the train. This principle is too well settled to require discussion.

*Case to stand for trial.*