KELLOGG (McCAULEY v.). See Case No. 8,688.

———

## Case No. 7,664.

KELLOGG v. MILWAUKEE & ST. P. RY. CO.

[5 Dill. 537.[1] 1 Cent. Law J. 278.]

Circuit Court, D. Iowa. May Term, 1874.[2]

NEGLIGENCE CAUSING FIRE—REMOTE AND PROXIMATE CAUSE—CONSTRUCTION OF STEAM ENGINE—DAMAGES CAUSED BY SPARKS—SPARK-ARRESTERS—DUTY OF GUARDING ELEVATORS.

1. The defendant was the owner of an elevator built on the bank of the Mississippi river, and also of a steamboat used in transferring cars and barges to and from it. The steamboat had no spark-arrester, and the exhausted steam was allowed to escape through its chimney. The plaintiff was the owner of a mill and a lumber yard, the former five hundred and twenty-eight and the latter three hundred and eighty-eight feet from the elevator and the space between these and the elevator was vacant; the elevator being unused, its spouts left open, and without a watchman; the steamboat, being in the necessary course of its occupation, moved alongside the elevator, and the weather being very dry, and the wind high and blowing in the direction of the plaintiff's mill and lumber, the elevator, by reason of sparks communicated from the chimney of the steamboat (as the evidence tended to show), caught fire, and from it fire was communicated to the plaintiff's mill and lumber, so that these latter were consumed. Upon these facts it is *held* that the defendant was not liable in any event, unless the fire was communicated to the elevator through the defendant's negligence, or the negligence of its servants, in the construction and use of the boat.

2. The defendant would not be liable unless the burning of the elevator was the proximate, and not merely the remote, cause of the burning of the mill and lumber.

———

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

[2] [Affirmed in 94 U. S. 469.]

3. Whether the burning of the elevator was the proximate or the remote cause of the burning of the mill and lumber was a question of fact for the jury.

4. The jury were therefore to determine whether the burning of the mill and lumber was the result naturally and reasonably to be expected from the burning of the elevator, and whether the burning of the elevator was the result of sparks communicated from the steamer.

5. There was nothing in the fact of the steam being emitted through the chimney of the steamboat from which the jury should infer negligence.

6. The leaving of the elevator unused, without a watchman, and with its spouts open, did not constitute such negligence as would make the defendant responsible to the plaintiff.

7. The question whether the defendant was guilty of negligence, in failing to make use of spark-arresters on its steamboat, was a question of fact for the jury.

[Cited in Crandall v. Goodrich Transp. Co., 16 Fed. 81.]

8. The true test of negligence in this and other cases is, what would an ordinarily prudent man have done under the precise circumstances?

It appears from the pleadings and the undisputed evidence in the cause that the plaintiff [Timothy Kellogg], on the 3d day of October, 1871, was in the possession of a sawmill on the bank of the Mississippi river, situate on certain lots in an addition to the town of McGregor, in Iowa, upon which there was a large quantity of lumber. At the same time the defendant [the Milwaukee & St. Paul Railway Company] was the owner of a large grain elevator building, also situate on the bank of the river, five hundred and twenty-eight feet above the mill of the plaintiff. The intervening property was vacant or unoccupied. This elevator was built before the plaintiff's mill, and was constructed of pine, and was from one hundred to one hundred and twenty feet in height. It seems to have been built after the usual model of elevators, and had spouts or openings on the east or river side thereof for the purpose of discharging grain into boats or barges. The lumber on the plaintiff's premises was distant from the elevator three hundred and eighty-eight feet. At the date above named, the defendant was also the owner of a steamboat called the "Jennie Brown," which was employed by it in transferring cars and barges back and forth between the end of its road at North McGregor, on the Iowa side of the river, and Prairie du Chien, on the Wisconsin side. On this 3d day of October, 1871, the elevator caught fire and was entirely consumed, and the fire therefrom extended to and also entirely consumed the plaintiff's lumber and his mill building and machinery. There was, at the time, an unusually high wind blowing from the elevator in the direction of the plaintiff's lumber and mill. The evidence tended to show that sparks and burning brands were carried directly from the elevator to the lumber and mill, and that the trees on the bluffs, six hundred feet distant from the elevator, were scorched and killed by the flames and heat from the elevator. The plaintiff brings this action against the railroad company to recover the value of the mill, machinery, lumber, and property thus consumed. The ground of his action is the defendant's alleged negligence, which the plaintiff claims was the cause of his loss, and was so directly the cause of it as to involve an actionable liability on the part of the defendant. There are several specific grounds of complaint in the petition against the defendant, in connection with this claim. (1) It is claimed that the defendant is at fault because it negligently omitted to provide the Jennie Brown with spark-arresters. (2) Because the exhausted steam was admitted into the smokestack, thereby intensifying the force of the draught, and that by reason thereof, and by reason of the absence of spark-arresters, the boat emitted or threw off large quantities of sparks and coals. (3) That the spouts or openings in the elevator on the river side were carelessly left open. (4) That the elevator at the time was unoccupied, and negligently left without a watchman or other person to look out for or prevent fire. The substantial charge in the petition is that in one of her trips the defendant "negligently permitted the steamboat to approach and lie alongside of, or in close proximity to, said grain elevator, and negligently allowed and caused long and strong draughts of escaped or exhausted steam to pass and rush into the smoke-stack of the boat, whereby large quantities of cinders, sparks, or coals of fire were forced up through and emitted from the smoke-stack against the elevator and openings in it, in consequence of which, and of the negligence of the defendant in not providing the proper and necessary spark-arresters, and of their negligence in not keeping some person in charge thereof, and of their negligence in not keeping the openings in said elevator closed, the same took fire from said sparks, and from thence the fire extended to and burned the plaintiff's mill and property." The defendant asked the court to instruct the jury that if "they believed from the evidence that the sparks from the Jennie Brown set fire to the elevator through the negligence of the defendant, and the distance from the elevator to the nearest lumber pile was three hundred and eighty-eight feet, and to the mill five hundred and twenty-eight, then the proximate cause of the burning of the mill and lumber was not the burning of the elevator, and the injury to the plaintiff is too remote from the negligence to afford a ground for recovery." This was refused.

Beach & Murdock, for plaintiff.
Cary & Updegraff, for defendant.

MILLER, Circuit Justice (charging jury). These three questions you are called upon to determine: 1st. Whether the elevator was burned by sparks from the Jennie Brown. 2d. If

it was so burned, was it in consequence of the negligence of the officers or men in charge of the Jennie Brown? 3d. Whether the burning of the mill and lumber was the natural and probable result of the burning of the elevator.

As to the first—whether or not the elevator caught fire from the sparks of the Jennie Brown—you can determine this as well as I can, and the decision of that question I leave with you without comment. In considering the other two propositions, I will commence with the last first. Supposing, for the present, that the elevator was burned down through the carelessness of the defendant, was the burning of the mill and lumber so connected with the burning of the elevator that the defendant would be responsible for it? On that point I have been asked by counsel to instruct, as a matter of law, that, by reason of the space intervening between the elevator and the mill of plaintiff, the burning of the elevator would not make them responsible. The authorities are in conflict upon that subject—that is, upon what is called remote consequences. Now, in the case before us, it is said that, while the burning of the elevator was the direct consequence of the sparks from the Jennie Brown, the burning of the mill and lumber was the remote consequence of the negligence of the defendant. I am not prepared to say this. I do not believe it is the duty of the court to take that question away from the jury, and I leave it with you, as was done at the former trial, to determine whether, under all the circumstances of the case—with the wind blowing; the inflammable character of the elevator; the combustible material of which it was composed; and, on the other hand, the distance between the elevator and the mill and lumber, and from all the evidence and circumstances before you—whether the burning of the mill and the lumber by the fire from the elevator was a consequence usually and naturally to be expected; whether the burning of the mill and lumber was the result naturally and reasonably to be expected from the burning of the elevator, and whether the burning of the elevator was the result of the sparks from the Jennie Brown. If you find that the officers of the boat were not guilty of negligence or carelessness, then the defendant is not liable to the plaintiff; but if you find the contrary to be true, then it may be responsible for the loss of the mill and the lumber. The main point upon which this case turns, in my judgment, is whether the parties who had charge of that boat were guilty of such negligence within the meaning of the law as would make them liable for causing fire to the mill and lumber of the plaintiff. If you find that the elevator was set on fire by the sparks from the boat (and I will so suppose for the purpose of illustration), then was the conduct of the parties in charge of the boat at the time of the fire characterized by such want of care, or want of

skill in her management, as to make the owners of the boat (this railroad company) liable for the burning? In the first place, I observe that the railroad company in this case stands precisely in the same position as if the boat was owned by an individual. There is no additional responsibility attaching because it was a railroad company, nor are they any less responsible because of that fact.

Two or three circumstances, apart from the transactions of that day, have been proved to you as showing, or tending to show negligence or carelessness on the part of the officers in charge of the boat on the day in question. The first of these to which I call your attention is the fact of the steam of the boat being emitted through the smoke-stack. As Judge Dillon instructed the jury before, so I instruct you now. There is nothing to presume any negligence on the part of the railroad company in that regard. It is one of the usual, if not necessary, means for increasing the locomotive power of the vessel—for increasing the amount of steam. It is almost universal, and, I presume, necessary, and no charge of negligence can be made against the owners of the boat because they permitted the steam to be emitted through the smoke-stack.

Another ground of carelessness alleged against the defendant, not connected with the boat, is that the elevator (which was also their property) was not being used, and that it was a season of the year when it was uncommonly dry; that it was made of inflammable material, was left without a watchman, and that it was left with certain openings—places where the grain was taken in—called spouts; that these spouts for the discharge of grain were left open. Supposing this to be so, there is no negligence in this respect upon which the defendant is responsible to the plaintiff. Because they were not using the elevator at the time is no reason why they should be called upon to keep a watchman, nor is the fact that these spouts are left open a ground of negligence.

A more interesting question on the subject of negligence grows out of the question discussed here in regard to the use of the spark-arrester, which is an apparatus on the chimney to arrest the sparks. On that subject I hesitated a good while whether I should have to say to you that there was no negligence in that regard—that is to say, that the owners of the boat were not bound to use these spark-extinguishers or arresters. But, upon further reflection, I do not think, upon the evidence, I am authorized to declare, as a matter of law, that that is so; but I must leave you to say, from the testimony, whether in this respect the owners of the boat were guilty of negligence. Upon this subject it is proper for me to remark that the true test of care and diligence on one side, and of negligence, which is the absence of diligence, on the other —a test which juries should apply, and which the law applies—is, what would an ordinarily

prudent man have done under the precise circumstances which are here presented to you? The best test you can bring to bear is, what would an ordinarily prudent and careful man, who owned a boat like this, or any other boat like it, have done in regard to employing the use of a spark-arrester or spark-extinguisher? If prudent and careful men do not think it necessary, and have found it impracticable to use them, the defendant is not bound to use them. That is one test. Another consideration upon this subject is that in this day and time, with the elements of transportation used in commercial transactions and with the great bulk of material transported to and from this country, from the east to the west and from the west to the east, the use of steam power has become not only necessary but indispensable to the interests of the whole country. Steam is now used as the old Conestoga wagon, with six horses, used to be. The expense of using steam power is taxed upon the products of the country transported. Motive power, bringing it down to the last principle, is the generation of steam, which is the main item of expense in transportation. Therefore, you are to consider how far the interests of the public require those using this great power to be restricted, and how far the good of the people requires those making use of it to adopt means of safety and protection. If steamboats" must adopt various apparatus, thereby increasing their expenses, they must charge them upon the products of the country transported by them. On the other hand, if they can dispense with such things without too great danger, it is to the interest of the people for them to do it. But they should adopt such means as may be useful for the protection of property and persons. Under all the circumstances, you are to consider what has been found to be generally used by prudent and careful men in the management of vessels and steam power; the general usage; the experiments made, and the opinions of those who have used the spark-extinguisher; and you are to say, under all the circumstances, whether there was any duty imposed upon the defendant to have a spark-extinguisher on its vessel at the time this fire occurred.

Now, gentlemen, you come to the main question, whether, in point of fact, in the management of that vessel on that day, and under the circumstances, there was any negligence on the part of the officers having charge of the boat? Upon that subject I do not know of any test better than that I have already given you. If you find the defendant was using such care as ordinarily prudent men would have used under like circumstances, then there would be no negligence on their part. You are to consider all the evidence upon the subject, and also the entire situation; the violence of the wind; the inflammable material of the elevator; the nearness of the vessel to the elevator.

You are to remember that these men had a right to go there; that it was one of their landing places; that they could not go directly up to their other landing place because another vessel was there. You are then to consider whether, in their attempt to get away from there, they increased the fire in their engines so that the sparks were unusually dangerous; whether it was prudent in them to use as much power and force as they did, or whether they used any force; whether the steam was got up in such a way that prudent men would have said: "We will stop this rather than go on; the danger is too great." You can consider that, or you can consider, on the other hand, whether they were doing only what was necessary to get off their barge. All this is for your determination, and there is no other rule but this simple one, that, while they had a right to use their vessel to get the barge away, to get up to the proper landing place, or up to the island, yet they were bound to have a due regard to the risk, to the danger that they might possibly set fire to the elevator and burn it, and not only burn the elevator, but other men's property. If the elevator was burned on account of their carelessness and negligence, then they are responsible for the burning of this man's property as well as of the elevator, if you believe they were so connected as I have already explained. If they used due diligence and due care, then they are not responsible, although the sparks from the boat may have set fire to the elevator, and from that fire the mill and lumber were burned.

Steam is a dangerous element; fire is a dangerous element; but people must use steam, and, although defendants had a right to use this vessel there, they were required to exercise due care and prudence, such as an ordinarily prudent and sensible man would have exercised. Was there anything to put them upon their guard? Did they exercise due care and prudence, such as a careful and prudent man would have done? This is the gist of your inquiry.

The jury found the following verdict: "1st. We, the jury, find that the elevator was burned from sparks emitted from the steamer Jennie Brown. 2d. That such burning was caused by not using ordinary care and prudence in landing at the elevator, under circumstances existing at that particular time. 3d. That the burning of the mill and lumber was the unavoidable consequence of burning of said elevator. We, the jury, therefore find for the plaintiff, and assess the damages at twelve thousand five hundred and two dollars and fifty cents ($12,502.50)." And the court rendered judgment upon the verdict.

NOTE. The subject of proximate and remote causes is ably treated, and the principal cases cited and learnedly commented on, in Whart. Neg. § 85 et seq. The author refers to the principal case (sections 154, 874). The learned author is mistaken in the statement (section 154) that "the defendant was clearly guilty of negli-

gence in not having spark-arresters to the smoke-pipe," since it was quite clearly established that spark-arresters had as yet proved unsuccessful and impracticable on boats engaged in navigating the Mississippi river.

The case of Toledo, W. & W. Ry. Co. v. Muthersbaugh, 71 Ill. 572, was this: Sparks from a locomotive set fire to a warehouse standing near the railway track and destroyed it. A stable stoood one hundred and one rods from the warehouse, and there were no intervening buildings. There being a high wind blowing at the time. from the direction of the burning warehouse, fire was communicated to the stable, and it was consumed: *Held*, that the owner of the stable could not recover damages against the railroad company. The burning of the warehouse was not the proximate but the remote cause of the burning of the stable. The court cite and follow Fent v. Railway Co. 59 Ill. 349. See, also Metallic Compression Casting Co. v. Fitchburg R. Co. [109 Mass. 277].

Liability of railway company for damages to property by fire caused by the company's negligence, see Grand Trunk R. Co. v. Richardson, 91 U. S. 454.

[The defendants took the case to the supreme court upon writ of error. After considering several alleged points of error in the admission and rejection of evidence, Mr. Justice Strong, who delivers the opinion of the court, considers the charge of Judge Miller above, as to whether the burning of the mill and lumber was the natural and probable result of the burning of the elevator. Says the learned justice: "The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or as in the oft-cited case of the squib thrown in the market place. Scott v. Shepherd, 2 W. Bl. 892. * * * The circuit court was correct in refusing to affirm the defendant's proposition, and in submitting to the jury to find whether the burning of the mill and lumber was a result naturally and reasonably to be expected from the burning of the elevator." The judgment of the circuit court was affirmed. 94 U. S. 469.]