## THE BALTIMORE AND OHIO SOUTHWESTERN RAILWAY COMPANY *v.* BRADFORD.

[No. 2,268.    Filed Feb. 17, 1898.    Rehearing denied June 7, 1898.]

PARENT AND CHILD.—*Action for Death of Child.*—Section 267, Burns' R. S. 1894, gives to the father the right to maintain an action for the injury or death of his child.  *p. 349.*

RAILROADS.—*Failure to Fence Track.*—*Injury to Child Wandering on Track.*—An action cannot be maintained against a railroad company for damages for the death of a child which had wandered upon the railroad track by reason of the track not being fenced as provided by section 5323, Burns' R. S. 1894, where no negligence is charged other than the violation of such statute.  *pp. 349-355.*

SAME.—*Trespasser on Track.*—*Children.*—A child two years of age is not by reason of its tender age prevented from becoming a trespasser upon a railroad track.  *p. 355.*

SAME.—*Failure to Give Signals of Approach of Train.*—*Damage for Death of Child while on Track.*—The object of the statutory provision requiring signals to be given of the approach of a train to a highway crossing is to warn persons having the right to use the crossing of the approach of danger, and an action cannot be maintained against a railroad company based upon the failure to give such statutory signals for the death of a child which had wandered upon the track and was killed by a train of cars, where the child was a trespasser on the track.  *pp. 355-359.*

From the Daviess Circuit Court.   *Reversed.*

*W. R. Gardiner, C. G. Gardiner, W. R. Gardiner, Jr.,* and *E. W. Strong,* for appellant.

*C. K. Tharp* and *J. McD. Huff,* for appellee.

HENLEY, J.—Action by the appellee against the appellant, the Baltimore & Ohio South Western Railway Company, for damages sustained by appellee by reason of the death of his infant daughter, who was killed by one of appellant's locomotives. The complaint was in two paragraphs. Both paragraphs of

complaint were demurred to by appellant. The lower court overruled the demurrers to each paragraph of the complaint, to which ruling of the court appellant excepted, and has assigned such ruling as error to this court. Appellant answered with general denial, and upon the issues thus formed there was a trial by jury. The court instructed the jury in writing. There was a verdict and judgment in favor of appellee for $850. The appellant moved the court for a new trial, which was overruled, to which ruling appellant excepted and assigns such ruling as error to this court. The record in this case properly presents all the questions argued by appellant's counsel.

It is first contended by appellant that the first paragraph of appellee's complaint does not state facts sufficient to constitute a cause of action, and that the court erred in overruling the demurrer thereto. The statutes of this State give to the father the right to maintain an action for the injury or death of a child. Section 267, Burns' R. S. 1894 (266, Horner's R. S. 1897); *Pittsburg, etc., R. W. Co.* v. *Vining's Admr.*, 27 Ind. 513; *Mayhew* v. *Burns*, 103 Ind. 328.

The first paragraph of complaint alleges in substance: That appellee was, on and prior to the 8th day of June, 1895, the father of one Ruth Bradford, who was a healthy, bright and intelligent child, and at that time two years old; that appellant, a railroad corporation, owned, operated and ran over its track trains of cars by and through the city of Washington, Daviess county, Indiana; that appellee on said day, together with said Ruth and his wife, were living on a farm which is situated about a mile west of Washington and which adjoins and abuts upon and lies immediately north of appellant's track and right of way; that the house in which appellant lived was situated about one hundred feet from appellant's track,

in an open space of ground used by appellee for a
yard and garden, and which open space extended from
the house down to and along appellant's right of way;
that on said day appellant, at about the hour of six
o'clock and fifteen minutes p. m., ran an extra train
of cars from its shops at Washington to Vincennes,
Indiana, and as said train passed by appellee's house
it struck said Ruth, who had wandered upon the
track, and killed her; that appellant and his wife at
all times vigilantly watched after the comfort and
safety of said child, but that on said day, without any
fault of appellee or any member of the family, said
child escaped from their sight for a few moments and
wandered upon the railroad track, and was run over
and killed as aforesaid; that, quoting from the com-
plaint, said child was killed on account of the care-
lessness of appellant in this: "That all the lands
along defendant's right of way where the same ad-
joins and abuts upon the lands occupied by the plain-
tiff, including the space used by him as his yard and
garden, were open, cleared, and in cultivation, and it
became and was the duty of the defendant to build,
keep and maintain along the north side of its right of
way where the same passes by the plaintiff's house,
yard and premises, a fence sufficient and suitable to
turn and prevent cattle, horses, mules, sheep, hogs, or
other stock from getting on said railroad track; that
notwithstanding said duty, and wholly in disregard of
the same, the said defendant carelessly and negli-
gently and knowingly suffered and permitted the
fence, which had been erected years ago along its
right of way by the plaintiff's home and premises, to
become old, worn out and torn down to the ground,
so that the same offered no obstruction whatever to
any kind of stock or to the plaintiff's child, and the
defendant carelessly, negligently, and wilfully failed

and refused to repair the fence, or to keep and maintain the same in such repair as would be sufficient and suitable to turn and prevent cattle, horses, mules, sheep or other stock from getting on said railroad track at the place where it passes the premises of the plaintiff; that said Ruth escaped from her home and went over and upon the defendant's said railroad track at or about where the defendant had suffered and permitted the fence to become out of repair and torn down to the ground, and was thus run over and killed by the defendant, without any fault or negligence upon his part; that if the fence had been built and maintained as it was the duty of the defendant to do, the said Ruth could not and would not have gone on said track and been killed, as aforesaid; that the said Ruth went on said railroad track, and was killed without any fault or negligence on his part, but solely because of the carelessness and negligence of the defendant in failing and refusing to keep said fence in proper repair, and in suffering and permitting the same to be and remain out of repair and torn down to the ground; that by reason of the defendant's said carelessness and negligence resulting in the death of his child, he has sustained great damage in the loss of the services of the said Ruth to wit, from the death of the said child until she would have arrived at the age of twenty-one years, amounting to $3,000, and has incurred $50 funeral and burial expenses, all to his damage in the sum of $3,050, for which he demands judgment and all proper relief."

There can be no doubt as to the theory upon which this paragraph of complaint is drawn. It is predicated upon the theory that appellant was required by law to construct a fence along the line between its right of way and the land of appellee sufficient to turn cattle, horses, mules, sheep, hogs, and other

stock; that appellant had not constructed such a fence; that if such fence had been constructed and maintained by appellant along and by appellee's premises, it would have prevented appellee's child from going upon the railroad and thus prevented appellee's injury; that in consequence of the failure to construct and maintain such fence, appellee's child did wander upon the railroad track and was killed by one of appellant's trains. No other negligent act is charged against appellant in this paragraph of complaint, save and except the single act of failing to construct and maintain the fence along its right of way.

The statutes of this State requiring railroads to fence their rights of way is as follows: "That any railroad corporation, lessee, assignee or receiver, or other person or corporation running, controlling or operating, or that may hereafter construct, build, run, control or operate any railroad into or through this state, shall, within twelve months of the day of the taking effect of this act, as to those already completed, and within twelve months from the date of construction and completion of any part of a line of road hereafter constructed, erect, build, construct and thereafter maintain fences, which may be constructed of barb wire, on both sides of such railroad throughout the entire length, completed within the state of Indiana, sufficient and suitable to turn and prevent cattle, horses, mules, sheep, hogs or other stock from getting on such road, except at the crossings of public roads and highways, and within such portions of cities and incorporated towns and villages as are or may be hereafter laid out and platted into lots and blocks, and shall, also, and in like manner and within the time hereinbefore prescribed, construct where the same has not already been done, and thereafter maintain at all pub-

The Baltimore and Ohio Southwestern R. W. Co. *v.* Bradford.

lic road and highway crossings now existing or here-
after established, barriers, and cattle guards suitable
and sufficient to prevent cattle, horses, sheep, hogs
and other stock from getting on such railroad; *Pro-
vided, however,* when such fences and cattle guards are
not made as herein provided or when such fence or
cattle guards are not kept in repair, such railroad cor-
poration, or person operating the same, shall be liable
for all damages which may be done by the agents,
employes, engineers, or cars of such corporation or
persons operating the same, to any such cattle, horses,
sheep, hogs or other stock thereon; *Provided, however,*
that such railroad corporation or other person operat-
ing the same shall not be required to fence such rail-
road track through unimproved and uninclosed lands,
and the provisions of this act shall not apply to such
parts and portions of any such railroad which runs
through unimproved and uninclosed lands, but when
such lands become improved and inclosed, on three
sides the same shall apply, and such railroad corpora-
tion or person operating the same shall be required to
fence the same under the provisions of this act within
six months from the date of such inclosure." Section
5323, Burns' R. S. 1894, 4098a, Horner's R. S. 1897.

This court is of the opinion that the injury herein
complained of is foreign to the object of the legisla-
tive order above referred to, and that there could be
no recovery under the first paragraph of appellee's
complaint; that the statute imposes no duty to fence
as respects children, and has no application to a
case like the one now before us. It is in many re-
spects similar to the case of *Gorris* v. *Scott*, L. R. 9
Exch. 125. The last named case was a suit instituted
by the owner of some sheep to recover from a ship-
owner for the loss of the sheep by reason of their being

washed overboard on account of the neglect of the ship owner to comply with the orders of the privy council, made pursuant to parliamentary authority, which orders compelled ship owners to dispose of domestic animals on shipboard in a certain way therein set out. The object of these requirements as to shipment was to prevent unnecessary suffering to the animals and to prevent the spread and communication of diseases among them. It was held by the court that the injury complained of was foreign to the object of the legislative order referred to, and a recovery was denied, although it was admitted that, had the law been complied with as to the disposition of the animals, they would not have been washed overboard, and the owner of the stock would not have suffered the injury complained of.

This principle is fully discussed in the well-considered case of *Hall* v. *Brown*, 54 N. H. 495. The Supreme Court of this State have held that the act of April 13, 1885 (section 5323, *supra*), did not repeal the act of 1863 (section 4025, *et seq.*, R. S. 1881). The title of the act of 1863 is, "An act to provide compensation to the owners of animals killed or injured by cars, locomotives, or other carriages of any railroad company in this State, and to enforce the collection of judgments rendered on account of the same." One section of the act provides that the act shall not apply to any railroad that may be securely fenced and the fences properly maintained. The act of 1885 provides that the railroads shall be fenced, if not by the companies, corporations or persons operating them, then by the land owner through whose land the road passes, under certain conditions in the statute set forth. The liability of the company failing to perform all the acts required by this law, is determined by the act itself. It is provided therein that when the fences, such as are de-

scribed in the act, are not made as therein provided, or when such fences or cattle guards are not kept in repair, the railroad corporation or person or company operating the same shall be liable for all damages done by the agents, employes, engines or cars of such corporation to any such cattle, hogs, sheep, horses or other stock thereon.

Our statutes upon the subject of fencing railroad rights of way are plain, and the mischief to be remedied thereby is fully and completely set out. What manner of a fence could a body of law-makers describe which would be sufficient to prevent children from going upon the right of way of a railroad company? Certainly no fence which would be sufficient to turn horses, cattle, sheep and hogs, as is specified by our law, would offer much of an obstacle to the ordinary boy four years old and upward, who might conclude in the absence of parental care, to climb over it. This court will take judicial notice that the child two years old is *non sui juris* and that, therefore, negligence will not be predicated upon its own conduct, but its tender age will not prevent it from becoming a trespasser (see *Rodgers* v. *Lees*, 140 Pa. St. 475), and as a trespasser the appellant owed no duty to it except that if the child was discovered on appellant's premises in a place of danger, to use every effort to prevent its injury. *Pennsylvania Co.* v. *Meyers, Admx.*, 136 Ind. 242; *Wabash R. W. Co.* v. *Jones*, 163 Ill. 167, 45 N. E. 50.

This brings us to the consideration of the second paragraph of complaint, wherein, after repeating the allegations of the first paragraph of complaint, appellant's negligence is stated in substance as follows: That it was the duty of appellant, in running its trains, and when the same was not less than eighty or more than one hundred rods from the public highway crossing, to sound the whistle on the engine three

times distinctly, and to ring the bell on said engine continually until the train passed the crossing; that the engineer on appellant's train failed, neglected and omitted to sound the whistle when the said train was eighty to one hundred rods from said crossing, or at any time, until said train was in the act of striking said child, and failed and neglected at any time to ring the bell on approaching said crossing, and failed and neglected to keep a proper lookout in front of said engine as the said engine approached the crossing. The second paragraph then continues as follows: "That by reason of defendant's neglect to sound the whistle three times distinctly when said engine was between eighty and one hundred rods from said highway crossing, and ring the bell continuously, neither the said child nor the plaintiff had any notice or warning of the approach of the train until it had got to a point opposite plaintiff's home; that had said whistle been sounded, as it was the defendant's duty to do when the same was eighty rods distant from said highway crossing, plaintiff's immediate attention, as it was his custom, on hearing the whistle of the engine, to look out for the child, would have been drawn to the perilous position of said child in time for him to get to it and rescue it; that had said engineer kept a careful and vigilant lookout on said railroad track in front of his engine, he could have discovered said child on said track in time to check and slow said engine up and stop the same before it struck the child. Plaintiff says that because of all the concurrent acts of negligence aforesaid, to wit, to fence said track, to sound the whistle and ring the bell so as to warn plaintiff of the approach of said 'train, and to keep a lookout and discover said child and slow up the train so as to give plaintiff time to

rescue said child, the said child was run over and killed by defendant."

It is not contended that appellee's child was not a trespasser upon appellant's track and right of way, and it is not alleged that appellant's engineer saw the child upon the track in time to have checked the train and avoided the injury. Then the injury could not have been wilfully inflicted; neither was the act negligently done because appellant, not seeing the trespassing child, owed no duty to it. If the train had been thrown from the track by reason of striking a trespasser, and an injured passenger thereon had brought suit against the railroad company, alleging the negligence of the company in that the engineer failed properly to observe the track and keep a lookout ahead for obstructions of any kind, or if the engineer had seen the child upon the track, and after seeing it had failed and neglected to use every means in his power to avert the disaster, then an entirely different case would be presented. The only other act of negligence charged in the second paragraph of appellee's complaint is appellant's failure to give the statutory signals at the crossing near where appellee's child was killed. There is no averment in the complaint that appellant's failure to give the statutory signals for the crossing contributed to the death of the child, except that it is alleged that if the whistle had been sounded and the bell rung, as is provided by the statute, appellee could have known of the approach of the train in time to find the child and rescue it.

The statute of this State in regard to signals to be given at crossings is as follows: "It shall be the duty of all railroad companies operating in this State to have attached to each and every locomotive engine a whistle and a bell, such as are now in use or may be hereafter used by all well managed railroad com-

panies, and the engineer or other person in charge of or operating such engine upon the line of any such railroad shall, when such engine approaches the crossing of any turnpike or other public highway in this State, and when such engine is not less than eighty nor more than one hundred rods from such crossing, sound the whistle on such engine distinctly three times and ring the bell attached to such engine continuously from the time of sounding such whistle until such engine shall have fully passed such crossing: *Provided*, etc.,  *  *  * ." Section 5307, Burns' R. S. 1894 (Acts 1881, p. 590).

We think the statute was intended solely for the protection of persons who might be upon or approaching crossings, or of animals being driven along the highway, and has no reference to a case like this. Here was a child, a trespasser upon appellant's right of way, not upon the highway or the crossing, but a considerable distance from the highway crossing, and had not been upon the crossing, but had come upon the right of way as a trespasser from the very first. It is not alleged that any one in charge of the train saw the child, but the allegation is that had the statutory signals been given for the crossing, the father of the child could have been warned that the train was approaching, and could then have searched for the child, and if found on appellant's track, could have rescued her before any injury was done. The case of *Metallic Compression Co.* v. *Fitchburg R. R. Co.*, 109 Mass. 277, was an action brought against a railroad corporation for damages for negligently severing a hose which was laid across the track in the town of Summerville, thereby cutting off the supply of water from a fire which was consuming plaintiff's factory, whereby the building and its contents were destroyed. It was said in that case: "One

of the grounds taken by the plaintiff is, that the defendant's train did not stop before crossing the Grand Junction Railroad, and thereby violated the General Statutes, c. 63, section 93, which requires that trains shall be stopped before crossing another railroad at grade. The point of the crossing was in sight of the fire, and a few hundred feet west of it. But the object of the statute was solely to prevent the collision of trains at crossings, and had no reference to the extinguishing of fires. It is not applicable to this case." And so the object of the statutory provision in this State requiring the sounding of the whistle and the ringing of the bell upon the approach of a train at a highway crossing is to warn "persons with vehicles and driving animals," they having a perfect right to use the highway and crossing; and it is presumed that if the signals are given they will avoid the danger. Trespassers cannot complain that the statute was violated. *Louisville, etc., R. W. Co.* v. *Green*, 120 Ind. 367; *Ivens* v. *Cincinnati, etc., R. W. Co.*, 103 Ind. 27; *Toomey* v. *Southern Pacific R. R. Co.*, 86 Cal. 374, 24 Pac. 1074; *Louisville, etc., R. W. Co.* v. *Howard*, 82 Ky. 212.

For the reasons above stated we are of the opinion that the second paragraph of complaint did not state a cause of action, and the lower court erred in overruling the demurrer addressed thereto. Cause reversed, with instructions to the lower court to sustain the demurrer to both paragraphs of the complaint.