# Louisville & Nashville Railroad Co. v. Scruggs & Echols.

*Action for Damages for Obstructing Track and Preventing Fire Department from Reaching Property on Fire.*

(Decided April 16, 1909.    Rehearing denied May 11, 1909.
49 South. 399.)

*Railroads; Injury to Property    Obstructing Street.*—A railroad company is not liable for damages caused by the failure of a fire department to reach plaintiff's building, which was alleged to have been prevented by an obstruction of a street by the railroad company's freight train being across the street, where it appears that a freight train in the regular course of its operation was stopped near the railroad company's office without any knowledge on the part of the company or its agent, that by stopping at that point they were preventing the fire departments from throwing water from a hydrant on plaintiff's building that was on fire on the other side of the track, and the train was moved as soon as the conductor received a clearance card from the dispatcher.
(McClellan, J., dissents.)

APPEAL from Morgan Circuit Court.

Heard before Hon. D. W. SPEAKE.

Action by Scruggs & Echols against the Louisville & Nashville Railroad Company, for damages resulting from the burning of a building alleged to have been caused from the fact that one of the company's freight trains was stopped in such a position that the fire department could not get water from a hydrant to the building. Judgment for plaintiff and defendant appeals.

Reversed and rendered.

JOHN C. EYSTER, GEORGE W. JONES, J. MANLY FOSTER, and LOWE & TIDWELL, for appellant.—Where it cannot be shown with reasonable certainty that the damages resulted from the defendant's acts there can be no recovery.—1 Ency of Law, 614; Cooley on Torts, p. 81;

8 A. & E. Ency of Law, 695. The damages resulting to plaintiff must have been the immediate and natural result of the act of the defendant.—*Crowley v. West End,* 43 South. 359. See Generall.—*American S. & T. P. Co. v. P. & L. E. R. R. Co.,* 12 L. R. A. (N. S.) 382.

E. W. GODBEY, and TYSON, WILSON & MARTIN, for appellee.—The well known principles of law governing this case find a concrete application in the analogous case of *Metallic Co. v. R. R. Co.,* 109 Mass. 277, and *Kiernan v. Construction Co.,* 49 N. E. 648; see also 1st Thomp. on Neg. sec. 981; see also *Tutwiler C. & C. Co. v. Nail,* 37 South. and *Glass' case,* 94 Ala. 587. The failure to use every means at hand to clear the way after knowledge of the fire rendered the defendant subject to damages.—*A. G. S. v. Fulton,* 144 Ala. 340; *Houren v. Chicago, etc., Ry. Co.,* 86 N. E. 611.

DOWDELL, C. J.—This case was tried by the court without the intervention of a jury, and judgment was rendered for the plaintiffs. From this judgment the defendant appeals, and here assigns its rendition as error.

But one question is argued and presented for our consideration, and that is whether there was a duty owing from the defendant to the plaintiffs, under the facts, for a violation of which the plaintiffs have a cause of action. There is no pretense that the defendant was in any way connected with the origin of the fire which destroyed the plaintiff's property. The undisputed evidence is that, when the defendant's servants moved the locomotive and train of 24 freight cars, from the company's yards to the point intervening between the hydrant or water plug and the plaintiff's property that was on fire, it was without any knowledge or notice on the part of the defendant or of its servants of any pur-

pose or intention of the fire department, or of any one else, of laying a hose across the defendant's track, from said water plug to the plaintiff's property. The movement of the train of cars was in the orderly course of the defendant's business. The place at which the train of cars was stopped, near the dispatcher's office, was its customary and usual place for stopping to receive orders and clearance card from the dispatcher, before it could proceed over what was termed the "block" —indicating in this case, a certain section of railroad used in common by the defendant company and the Southern Railway Company—on its journey to Nashville, the place of its destination. The evidence as to the length of time the train remained stationary varies from 5 to "15 or 20" minutes; but we think this unimportant, as the evidence is without dispute that the train moved on its journey over the block, immediately upon the receipt by the conductor, who had control of its movements, of the clearance card from the dispatcher. Thus it is seen that the defendant company was in the rightful use of its property, in the ordinary and usual course of business. It was guilty of no negligence, in the exercise of its rights, resulting in injury to the plaintiff's property. In the legitimate use of its own tracks, in the orderly course of business, the defendant, under the evidence in this case, was not by law charged with the duty to move its train of cars otherwise than according to its own rules and regulations.

We fully recognize the principle of law expressed in the maxim, "Sic utere tuo ut alienum non lædas"; but this principle finds no application under the facts of this case. We find the doctrine applicable here well stated in Cooley on Torts (1st Ed.) p. 81, where it is said: "It is 'damnum absque injuria' also if through the lawful and proper exercise by one man of his own

rights a damage results to another, even though he might have anticipated the result and avoided it. That which it is right and lawful for one man to do cannot furnish the foundation for an action in favor of another. Nor can the absence of commendable motive on the part of the party exercising his rights be the legal substitute or equivalent for the thing amiss which is one of the necessary elements of a wrong. An act which does not amount to a legal injury cannot be actionable because it is done with a bad intent." Again, in American & English Encyclopedia of Law (2d Ed.) vol. 8, p. 695, the doctrine is thus stated: "Applying this principle, it may be stated as a general proposition that every man has a right to the natural use and enjoyment of his own property, and if while lawfully in such use and enjoyment, without negligence or malice on his part, an unavoidable loss occurs to his neighbor, it is 'damnum absque injuria,' for the rightful use of one's own property may cause damage to another without any legal wrong." Applying this doctrine to the case before us, our conclusion is that, on the undisputed evidence, the trial court should have rendered judgment in favor of the defendant.

In respect to legal responsibility to a third person, there is, we think, a distinction to be drawn between an active and a passive use, in the enjoyment of one's property rights. To illustrate: If, in the present case, the fire hose had been laid from the hydrant, across the tracks of the defendant, to the fire, and the defendant's servants, with knowledge of the existing conditions as to the fire and the laying of the hose, had willfully or negligently run the train of cars over the hose, destroying it, and thereby prevented the extinguishing of the fire, a legal liability for such conduct would have arisen. That would have been an active use of one's prop-

[Louisville & Nashville Railroad Co. v. Scruggs & Echols.]

erty in violation of the maxim, "Sic utere tuo ut alienum non lædas." On the other hand, if (as was the case here) the defendant's train of cars was already rightfully standing on its tracks intervening the hydrant and the plaintiff's burning house, and the defendant merely failed or refused to promptly move its train out of the way when requested so to do, in order that the hose might be laid across its tracks, there would be no case for the application of the above-quoted legal maxim. In the latter instance the use would be merely passive. The law imposes no duty on one man to aid another in the preservation of the latter's property, but only the duty not to injure another's property in the use of his own.

In the case of *American Sheet & Tin Plate Co. v. Pittsburg & L. E. Ry. Co.,* 143 Fed. 789, 75 C. C. A. 47 12 L. R. A. (N. S.) 382, cited and relied on by counsel for appellees, the facts are different from those in the case at bar. In that case the train of cars rested across a street crossing where the firemen wished to lay a hose to reach the fire. It is true it is stated that the street had been abandoned as such, by the city, but it was maintained as a crossing by the company. The case, we think, when properly understood, is not opposed to the views we have expressed. Moreover, it was decided in that case that the railroad company was not liable.

Other cases cited by counsel are different, in their facts, from the case at bar, and are easily to be differentiated in principle.

The judgment appealed from will be reversed, and one here rendered in favor of the defendant.

Reversed and rendered.

SIMPSON, MAYFIELD, and SAYRE, JJ., concur.

McCLELLAN, J. (dissenting). The case made for the plaintiffs is, in substance, this: A freight train of

the defendant, in orderly course of operation, was rolled up to a point on its track near defendant's office and there stopped, thereby raising an obstruction between a building on fire and the nearest convenient fire plug; and when the employes having the physical control of the engine and train were requested to move the train so as to permit the fire hose, already connected with the plug, and which hose was of sufficient length to reach the conflagration, they wrongfully failed or refused to do so, and, in consequence, the property of the plaintiffs were damaged or destroyed. Of course, this statement takes no account of the conflict instituted by the testimony favorable to the defendant.

The right that one has to the use and enjoyment of his property, even for the purposes entirely lawful, is not absolute; and the lack of this absoluteness is expressed in the maxim, "Sic utere ut alienum non lædas." And when the use and enjoyment of private property is opposed in exercise to casualties such as conflagrations in populous communities, the private right must yield to the qualification expressed in the maxim, "Salus populi suprema est lex."—*Phoenix Assurance Co. v. Fire Department,* 117 Ala. 649, 23 South. 843, 42 L. R. A. 468. The soundness and wholesomeness of the doctrine of these two maxims cannot, of course, be disputed. They are at least as old as the common law itself, and attach to the right of use and enjoyment of all property; but the controversy here does not involve a questioning of the doctrine stated in the first maxim. It involves the denial of the application of the doctrine to the mere inactive wrong, the omission, alleged to inhere in the failure or refusal to remove—as the ability and facility so to do, with safety, existed—the obstruction to the laying of the connected hose from the plug to the burning building. Since negligence can be predicated only upon

breach of duty, it is clear that the inquiry is: Was it the duty of the employes, in physical control of the engine and train occasioning the mentioned obstruction, to remove it, either by moving the train or by "cutting" the train; notice of the necessity to do so, in order to permit the application of the water to the fire, being given these employes? There is no serious contention that the backing of the train, or the cutting of it, so as to admit of the laying of the hose across the track, would have endangered that or other property of the defendant, or the safety of persons in its employ or using its service, nor was any hazard assigned, on the occasion, as a reason for such failure or refusal.

It has been ruled, upon what seems to me conclusive reasoning, that the duty rests on a railway or street car company to refrain, after notice, from severing hose laid across its track with the view to the extinguishment of a fire, and that a breach of this duty is a wrong for which the company is liable, if the damage claimed is a proximate consequence thereon.—*American Sheet & Tin Co. v. Pittsburg R. Co.,* 143 Fed. 789, 75 C. C. A. 47, 12 L. R. A. (N. S.) 382, and note:—*Little Rock Traction Co. v. McCaskill,* 75 Ark. 133, 86 S. W. 997, 70 L. R. A. 680, 112 Am. St. Rep. 48; *Metallic Casting Co. v. Fitchburg R. Co.,* 109 Mass. 277, 12 Am. Rep. 689; note to *Byrd v. English,* 64 L. R. A. 95, 96. In my opinion the cases of the cited class rest on a principle common to them and to that at bar. I cannot improve on the statement of the principle to be found in the *American Sheet & Tin Co. v. Pittsburg R. Co., supra*: "It is not denied that a natural person, or a corporation by its corporate agencies, may so interfere with the rights of another, growing out of the emergency of a fire or conflagration of or on such other person's property or premises, as to make him or it liable for injury and damage

directly resulting from such interference. Actionable interference of this kind is the violation of a fundamental social duty, and is within the definition of a common-law tort. Private property may be entered by the public authorities, or by the person, or his agents, who is owner of the burning building, for the purpose of using reasonable means to save the same or to extinguish the fire; and undoubtedly, in the case now before us, the plaintiffs' employes, as well as the public firemen, had the right to cross the right of way and tracks of the defendant company for the purpose of leading the hose from the source of supply to the burning building." In the case just quoted, the question under consideration in the case at bar was presented; and following the principle declared, as quoted, the court, through Justice Gray, exonerated the defendant upon the evident assumption that the duty to move or cut the train, so as to avoid interference with the efforts to extinguish the fire, was met by those in physical control of the train; the proof showing a promptly announced and acted-on willingness and purpose of the enginemen to relieve the emergency of the interference occasioned by his train. The majority attempt to distinguish this case upon the ground that a *street* was blocked by the standing train. Yet the statement of facts made by the learned judge shows (at page 384 of 12 L. R. A. (N. S.) that the "so-called Fifteenth street crossing was a way maintained by the *company* across the tracks of the railway company, on the line of what was *formerly* 'Fifteenth street,' but for a long time abandoned as a city street." (Italics supplied.) The attempted differentiation is expressly refuted.

Besides, a principle may be applicable or not, owing to the facts; but a principle is never altered, whatever the facts. And the principle, clearly announced by Judge

Gray, affects the duty due from the carrier to the fire-
men regardless of the public character of the place
whereat the crossing of the track with the hose is nec-
essary to the application of water to the fire. A perfect
analogy, in principle, is afforded by the decision in *Ala-
bama Great Southern Railroad Co. v. Fulton*, 144 Ala.
340, 39 South. 282, where it was held to be the duty of
the trainmen to stop the train (if practicable) in order
to allay the discovered freight of an animal being driven
near the track but not on a public highway. The doc-
trine of the maxim, "Sic utere tuo ut olienum non læ-
das," was in fact applied in *Fulton's Case* to the effect
that the right to the use and enjoyment of the carrier's
property was qualified by the stated emergency, not at-
tributable to the carrier in any degree.—*Houren v. Chi-
cago R. R.*, 236 Ill. 620, 86 N. E. 611, is an authority
opposed to the majority view in this case. In my opin-
ion there are none in support of the conclusion of the
majority.

According to the testimony for the plaintiffs, the em-
ployes in the physical control of this train evinced, after
full notice, an indifference to the situation and emer-
gency that was little short of shocking. If A. own an
alleyway leading from the street to near B.'s dwelling
to the rear, and such alleyway is bounded on either side
by buildings owned by A., and the entrance to that alley
is by a heavy gate on which A. has a lock of special
pattern, and it becomes necessary, in the reasonable
judgment of the firemen, to approach B.'s burning build-
ing through A.'s alleyway, and the firemen request A. to
unlock his gate that the hose may be carried from the
plug to the fire, and A. refuses to unlock the gate, al-
though he might readily do so; and the firemen undertake
in the interest of the extinguishment of the con-
flagration, to break down the gate, within their right

to do, and great delay, in applying, from the indicated direction, water to the flames, ensues, and injury and damage to the property of B. results as a proximate consequence of the delay in removal, by force, of A.'s gate, could it be doubted that A.'s conduct was within the common-law definition of "tort," based on a high social duty mentioned by Judge Gray? Other illustrations readily suggest themselves.

Counsel for appellant seek to show the unsoundness of the conclusion attained by the court below by an illustration hypothesizing circumstances where the owner of a building, adjoining another building then on fire, is requested by the owner of one beyond that so adjoining the burning building to raze it, because the safety of the latter building is endangered by the fact that the intervening building will be ignited by the one already burning, and the fire thence communicated; and, in consequence of the refusal of the owner so requested to raze his building, the building more removed from the original building is burned. Whatever may be the ruling with respect to liability in such a case when it arises, the illustration is inapt in this case, for the reason that here no destruction of property, nor its hazarding, was involved in the requested removal of the interference with the right to cross the tracks of the defendant as and for the purpose set forth in the complaint and shown by the testimony for the plaintiffs. The interference here complained of arose from a cause easily removable, at the will of the person in control thereof—an agency contrived to be propelled.

Of course, it follows that the application of the doctrine of the maxim, "Sic utere tuo ut alienum non lædas," excludes an appeal to the doctrine of the maxim, "Damnum absque injuria," for the obvious reason that the latter doctrine is grounded in rightful use; whereas,

the status raised by the interference with the extinguishment of the fire on appellees' premises was a violation of a duty created by the emergency coupled with the right to reach the burning building with the appliances maintained for the purpose of extinguishing fires.

The judgment should, in my opinion, be affirmed.

