MANDOLI, RESPONDENT, *v.* NATIONAL COUNCIL OF KNIGHTS & LADIES OF SECURITY, APPELLANT.

(No. 4,229.)

(Submitted November 18, 1920.   Decided December 13, 1920.)

[194 Pac. 493.]

*Life   Insurance—Warranties—Breach—Effect—Directed   Verdicts.*

Life  Insurance—Policy—Application—Warranties—Breach.
   1. Where a policy of life insurance makes the answers and statements in the application warranties, and constitutes them a part of the contract of insurance, an untrue statement concerning a matter of fact that is or ought to be within the personal knowledge of the applicant is a breach of the warranty and renders the policy void.

Representations of insured in application for life insurance as warranties, see note in 37 **Am. St. Rep.** 372.

Same—Application—False Answers—Breach of Warranties.
    2.  Where the answers of the applicant for a policy of life insur-
ance, under the terms of which the answers were made warranties,
to questions in the application whether she had suffered with rheu-
matism, hemorrhages or menstrual disorders, or whether she had con-
sulted or had been treated by any physician or surgeon for any ill-
ness, disease or injury within five years previous to the date of the
application, were untrue, the beneficiary could not recover.

Same—Conditions and Contingencies—Parties may Stipulate.
    3.  Parties to a contract of life insurance may stipulate that its
validity shall depend upon conditions or contingencies embodied in
the contract itself.

Directed Verdict—When Proper.
    4.  Where the evidence is in such a condition that if the case should
be submitted to the jury, and a verdict for the plaintiff returned,
it would be the duty of the supreme court to set it aside, a motion
by defendant for a directed verdict should be granted.

*Appeal from District Court, Deer Lodge County; Geo. B.
Winston, Judge.*

ACTION by Andy Mandoli against the National Council of
Knights and Ladies of Security. From a judgment for plain-
tiff, and an order denying a motion for new trial, defendant
appeals. Reversed.

Cause submitted on briefs of Counsel.

*Mr. Chas. E. Avery,* for Appellant, submitted a brief.

Whether it is proper to grant a nonsuit or direct a verdict
in an action on a life policy is governed by the rules applica-
ble to the trial of civil actions in general.   (25 Cyc. 949.)

Where a material false representation or breach of warranty
is shown by the uncontradicted evidence, and no waiver thereof
by the insurer is proved, a nonsuit should be granted or a
verdict directed for defendant.   (25 Cyc. 951; *Ward* v. *Metro-
politan Life Ins. Co.,* 66 Conn. 227, 50 Am. St. Rep. 80, 33
Atl. 902; *Finn* v. *Prudential Ins. Co.,* 98 App. Div. 588, 90
N. Y. Supp. 697; *Brady* v. *Industrial Benefit Assn.,* 79 Hun,
156, 29 N. Y. Supp. 768; *Dwight* v. *Germania Life Ins. Co.,*
103 N. Y. 341, 57 Am. Rep. 729, 8 N. E. 654; *Mutual Reserve
Fund Life Assn.* v. *Opp* (Miss.), 30 South. 69; *Smith* v. *North-
western Mutual Life Ins. Co.,* 196 Pa. St. 314, 46 Atl. 426;

*Grand Fraternity* v. *Keatley,* 4 Boyce (27 Del.), 308, 88 Atl. 553; *Brisou* v. *Metropolitan Life Ins. Co.* (Ky.), 115 S. W. 785.)

*Mr. John W. James* and *Mr. T. P. Stewart,* for Respondent.

"The question of the truth or falsity of warranties in an application for insurance, where there is a conflict in the evidence, is a question of fact for the jury." (*National Council etc.* v. *Owen,* 61 Okl. 256, 161 Pac. 178.)

In the case of *Aetna Ins. Co.* v. *Simmons,* 49 Neb. 811, 69 N. W. 125, the suit was upon a policy of insurance and was defended upon the ground that the answers to the questions were false; that the answers were warranties, and therefore the policy was void from its inception. The court held that the answers were not warranties, but representations which need not be complied with literally.

The language in a similar policy was construed to be a statement and not a warranty. (*Supreme Lodge etc.* v. *Edwards,* 15 Ind. App. 524, 41 N. E. 850.) Statements made in the policy, being in the nature of representations only, the question is of their substantial, and not their literal, truth. To defeat the policy, they must be shown to be materially untrue, or untrue in some particular material to the risk. We understand it to be a question for the jury to determine whether the facts which appear in evidence are so far inconsistent with the answers relied upon in the application as to establish a material misrepresentation. (*Aetna Ins. Co.* v. *Simmons,* 49 Neb. 811, 69 N. W. 125.) Statements contained in the application for insurance will not be construed as warranties, unless the provisions in the application and policy taken together leave no room for any other construction; and, in order that such representation may constitute a defense to the action, it is incumbent on the insurance company to plead and prove that the statements and answers were made as written in the application; that they were false in some particular material to the insurance risk; that they were made intentionally by the insured, and that the insurance company relied and acted upon such statements. These are questions of fact and not questions of law. (*Kettenbach* v. *Omaha Life Assn.,* 49 Neb. 842,

69 N. W. 135, 138; *Goff* v. *Supreme Lodge etc.*, 90 Neb. 578, 37 L. R. A. (n. s.) 1191, 134 N. W. 239.)

The question as to whether or not Mrs. Mandoli had consulted a physician is also a question for the jury. (*Modern Woodmen of America* v. *Wilson*, 76 Neb. 344, 107 N. W. 568.)

The fact whether or not a statement made is a warranty or a mere representation must be determined by a construction of all the language in the application. (*Indiana Farmers' Livestock Ins. Co.* v. *Rundell*, 7 Ind. App. 426, 34 N. E. 588.)

In a case similar to the one at bar in many respects, wherein the question of misrepresentation was discussed, the court says: "If any construction can reasonably be put in the question and the answer such as will avoid forfeiture of the policy on the ground of falsity of the answer, that construction will be given and the policy will be sustained." (*Lyon* v. *United Moderns*, 148 Cal. 470, 113 Am. St. Rep. 291, 7 Ann. Cas. 672, 4 L. R. A. (n. s.) 247, 83 Pac. 804; *Newton* v. *Southwestern Mut. Life Assn.*, 116 Iowa, 311, 90 N. W. 73.)

In the case of the *Northwestern Mut. Life Ins. Co.* v. *Woods*, it was held that the insured was bound only to the exercise of good faith and to answer truthfully as to all matters within his knowledge, and an omission to state a fact which is honestly deemed immaterial will not vitiate the policy even where the written statements in the application are warranted to be true. (*Northwestern Mut. Life Ins. Co.* v. *Woods*, 54 Kan. 663, 39 Pac. 189.)

A warranty in insurance law is the assertion by the assured of some fact on the literal truth of which the validity of the policy depends, without regard to the materiality of such fact or the motive which prompted the assertion. A representation in insurance law is also the assertion by the insured of some fact, but the validity of the policy does not depend on the literal truth of the assertion. If a doubt exists as to whether a statement made is a warranty or a representation, it will be held a representation, and that warranties are not to be created or extended by construction. (*Aetna Life Ins. Co.* v. *Rehlaender*, 68 Neb. 284, 4 Ann. Cas. 251, 94 N. W. 129.) Statements like those made by the insured in this case are facts

held to be representations in *Campbell* v. *New England Mut.
Life Ins. Co.,* 98 Mass. 381; *Daniels* v. *Hudson River Fire Ins.
Co.,* 12 Cush. (Mass.) 416, 59 Am. Dec. 192; *Supreme Lodge
etc.* v. *Edwards,* 15 Ind. App. 524, 41 N. E. 850; *Northwest-
ern Mut. Life Ins. Co.* v. *Woods,* 54 Kan. 663, 39 Pac. 189;
*Miller* v. *Mutual Ben. Life Ins. Co.,* 31 Iowa, 216, 7 Am. Rep.
122; *Anders* v. *Supreme Lodge Knights of Honor,* 51 N. J. L.
175, 17 Atl. 119; *Northwestern Benevolent & M. A. Assn.* v.
*Cain,* 21 Ill. App. 471; *Modern Woodmen Acc. Assn.* v.
*Shryock,* 54 Neb. 250, 39 L. R. A. 826, 74 N. W. 607.

Where an application for insurance refers to certain state-
ments therein made as warranties, and the policy recites that
the certificate is issued in consideration of representations and
declarations made in the application, such statements are rep-
resentations only and not warranties. (*Supreme Lodge, etc.,*
v. *Edwards,* 15 Ind. App. 524, 41 N. E. 850.)

The case of *Farragher* v. *Knights & Ladies of Security,* 98
Kan. 601, 159 Pac. 3, appeals to us as being "on all-fours"
with the case at bar recently passed upon, construing the very
contract in question, that is, the contract of the Knights and
Ladies of Security; and the questions here raised were therein
passed upon in favor of our contentions.

MR. JUSTICE COOPER delivered the opinion of the court.

On the twenty-fifth day of March, 1916, Amy Mandoli was
received into the local lodge and branch of the National Coun-
cil of the Knights and Ladies of Security, at Anaconda, in this
state, and, until her death on the tenth day of January, 1917,
remained a member thereof in good standing. When she
became a member of the society, there was executed and deliv-
ered to her a benefit certificate binding the defendant to pay
to the beneficiary therein upon her death the sum of $3,000.
After proof of death, demand for payment was made upon the
defendant society in conformity with the obligations assumed
by it; but payment was refused upon the ground that the
statements and warranties of the deceased contained in the
application of the assured for membership did not disclose the

true condition of her health before or at the time of making the application. Plaintiff, the beneficiary named in the certificate, thereupon commenced his action to enforce payment.

The complaint alleges that at the time of her death, the assured was in good standing. It is set forth in the answer of the defendant that, but for the false and untrue statements contained in the application for membership, which the applicant warranted to be true, the certificate sued on would not have been issued. By replication, the plaintiff denied all the affirmative allegations of the answer, bringing to issue the question whether the statements and warranties were actually made, and the further question whether they were true or false. A trial was had before the court and a jury, resulting in a verdict for the plaintiff. A motion for a new trial was denied by the district court from whence these appeals come.

To bring into prominence the material points in issue, we quote first the statements of the applicant upon which the defendant was induced to issue the policy, viz.:

"I have not now, and never have had, and no physician has ever treated me for, * * * hemorrhages of any kind, rheumatism in any form, spitting or raising of blood. * * *

"Have you either consulted, or been treated, by any physician or surgeon within the past five years for any illness, disease, or injury? If so, give name and address of each and full particulars. No..

"Have you now or ever had any menstrual disorder? No."

The application contains the following agreement and warranty:

"I hereby certify that I am temperate in my habits, and I am in sound physical and mental condition, and I am a fit subject for life insurance.

"I hereby make application for a beneficiary certificate from the National Council of the Knights and Ladies of Security. And I hereby declare that the foregoing answers and statements are true, full, and correct, and I acknowledge and agree that the said answers and statements, with this application, shall form the basis of my agreement with the order, and constitute a warranty. I hereby make my medical examination a

part of this application and agree that this application and medical examination shall be considered a part of my beneficiary certificate, and together with the constitution and laws of the society as now existing or hereafter amended shall constitute my contract with the society.

"I further declare and agree that I have verified each of the foregoing answers and statements from 1 to 45, inclusive, and that I know and understand the contents hereof and that the answers and statements as written herein are as given by me."

If the answers to the questions propounded were not true, [1] they constituted breaches of warranty and the plaintiff is not entitled to recover. The law seems to be well settled that where a policy of insurance makes the answers and statements contained in the application, warranties and constitutes them a part of the contract of insurance, an untrue statement concerning a matter of fact that is, or ought to be, within the personal knowledge of the applicant, constitutes a breach of the warranty and renders the policy void. The question is not a new one in this jurisdiction. (*Collins* v. *Metropolitan Life Ins. Co.*, 32 Mont. 329, 108 Am. St. Rep. 578, 80 Pac. 609, 1092; *Pelican* v. *Mutual Life Ins. Co.*, 44 Mont. 277, 119 Pac. 778.)

Mr. Bailey, a recent writer upon the subject of Life Insurance, states the rule as follows: "The substance of the decisions relating to the subject of warranty in insurance contracts is that the truth of all statements warranted to be true is a condition precedent to the liability of the insurer; for, if the statements so warranted are untrue, there is no contract." The author then quotes with approval the language of Mr. Chief Justice Brantly in the *Pelican Case* above cited, as follows: "The general rule is that a warranty must be a part and parcel of the contract, made so by express agreement of the parties upon the face of the policy. It is in the nature of a condition precedent and must be strictly complied with or literally fulfilled, to entitle the assured to recover on the policy. It need not be actually material to the risk; its falsity

will bar recovery because by the express stipulation the statement is warranted to be true, and thus is made material."

If, then, the answers of the insured given to the question [2] Whether she had suffered with rheumatism, hemorrhages or menstrual disorders, or whether she had consulted or had been treated by any physician or surgeon for any illness, disease or injury within five years previous to the date of the application, were untrue, the plaintiff cannot recover. In *Fish* v. *Metropolitan Life Ins. Co.,* 73 N. J. L. 619, 64 Atl. 109, the applicant had stated that he had not been under the care of a physician within two years prior to the application for insurance. The proof showed that he had been attended by a physician eight times for rheumatism in the shoulder. A plea setting up a breach of warranty was overruled in the trial court; but for the reasons indicated the case was reversed by the court of errors and appeals of the state of New Jersey, and a new trial ordered. To the same effect are *Cobb* v. *Covenant Mut. Benefit Assn.,* 153 Mass. 176, 25 Am. St. Rep. 619, 10 L. R. A. 666, 26 N. E. 230; Bacon on Life and Accident Insurance, sec. 284, and cases cited; *Campbell* v. *New England Mut. Life Ins. Co.,* 98 Mass. 381.

The law recognizes the competency of applicants for insurance to make agreements of binding force, and if, upon a reasonable interpretation of all the stipulations of the parties, such was the contract, it is the duty of the court to [3] enforce it according to its terms. Parties to a contract of life insurance are not forbidden to stipulate that its validity shall depend upon conditions or contingencies embodied in the contract itself. (*Jeffries* v. *Economical Mut. Life Ins. Co.,* 22 Wall. 47, 22 L. Ed. 833; *Aetna Life Ins. Co.* v. *France,* 91 U. S. 510, 23 L. Ed. 401; *Northern Assur. Co.* v. *Grand View Building Assn.,* 183 U. S. 308, 46 L. Ed. 213, 22 Sup. Ct. Rep. 133; *Aetna Life Ins. Co.* v. *Moore,* 231 U. S. 543, 58 L. Ed. 356, 34 Sup. Ct. Rep. 186; *Moulor* v. *American Life Ins. Co.,* 111 U. S. 335, 28 L. Ed. 447, 4 Sup. Ct. Rep. 466 [see, also, Rose's U. S. Notes].)

The application and the policy in suit, attached together, were made a part of the complaint, and conform in all re-

spects to the requirements of section 5608 of the Revised Codes, and of Chapter 140, page 403, Laws of 1911 (Rev. Codes, Supp. 1915, p. 906). The signature of the deceased to the application was identified by Andy Mondoli, the husband of the assured, and, together with the policy, were admitted in evidence upon the trial. The only issue for decision, therefore, was: Were the statements and warranties appearing in the application for a certificate true or false?

In the certificate itself the following appears: "This beneficiary certificate is issued by said National Council and accepted by the member only upon the following express warranties, conditions and agreements:

"1. That the application for membership in this order, made by the said member, together with the report of the medical examiner, which is on file in the office of the National Secretary, and both of which are made a part hereof, are true in all respects, and each and every part thereof shall be held to be a strict warranty and to form the only basis of the liability of the order to said member, or said member's beneficiaries, the same as if fully set forth in this certificate, and that the application and medical examination herein referred to and the constitution and laws of the society as the same now exist or as may be hereafter enacted, and this beneficiary certificate shall all be construed together as forming parts of the contract between the National Council and the member.

"2. That if said application and medical examination shall not be true in each and every part thereof, then this beneficiary certificate shall as to said member, or said member's beneficiaries, be absolutely null and void."

Dealing now with the specific facts: If it appears by the undisputed testimony that the assured had been treated by a physician or surgeon for illness, disease or injury within five years prior to the making of the application, there was nothing requiring the court to submit the case to the jury, and the defendant's motion for a verdict in its favor should have been granted. The following testimony bearing on the application of the questions and answers therein is uncontroverted, and its effect is not avoided by anything in the record before us:

Dr. A. J. Willetts, called as a witness for the defendant, testified that he was a physician and surgeon, and that he was called to treat the deceased three times previous to her death, and, quoting his language: "October 11, 21 and 30, in 1915, I saw her on three occasions. What I treated her for was disturbance of the stomach, and I did not treat her for anything else. I made an examination of her, a physical examination, fairly complete, of the stomach and pelvic organs, for the purpose of determining what the cause of her symptoms was. Her symptoms were nausea, vomiting and amenorrhea. Q. The absence of menstruation would indicate what? A. The commonest cause is pregnancy. I examined her for the purpose of determining whether or not she was pregnant, and I concluded that she was pregnant. As regards how long it had been since she had menstruated, well, the only way I could tell that was what she told me. I have no way of knowing whether or not menstruation had been absent at all, except her declaration that it had been absent three or four months. If she was not pregnant, the interruption of menstruation for that period of time in a young and healthy woman would constitute a menstrual disorder of some importance; in the absence of other symptoms, one could not say whether it was a serious matter or not, but definitely a menstrual disorder is absolutely abnormal with a young healthy woman in the absence of pregnancy, not to be menstruated."

Dr. J. M. Sligh testified as follows: "I had occasion to treat Mrs. Mandoli personally; as near as I can recollect that was the latter part of November, 1915, and the fore part of December following. I treated her at her home and that of her mother. I first treated her for rheumatism. I paid two or three visits to her house. I made three or four visits to her mother's house. At her mother's house I treated her for persistent hemorrhage of the nose, lasting upward of 24 hours, I believe. I had to pack the nose twice; that was a severe hemorrhage. I treated her probably a month or two prior and also after that time and prior to March, 1916; that was at my office and at her mother's house. I do not remember exactly the dates of those visits." On cross-examination he

testified: "I treated her at that time, as I say, for rheumatism —muscular rheumatism over the body generally, particularly in the legs. When I visited her, she was not confined to her bed; she said she had been previously. I told her she had rheumatism. * * * The general condition of Mrs. Mandoli's health at that time was that she was very much run down. A few days after that I visited her at her mother's house, three or four times; that was for hemorrhage from the nose, bleeding; hemorrhage means bleeding. I mean a bleeding from the nose. That was at her mother's house. * * * The condition I found there that I diagnosed as rheumatism might possibly have had its origin in the same thing as the cold, or from exposure or wet. It is not rather unusual for rheumatism to disappear in two or three days; muscular rheumatism may disappear in that time. She did not have any aggravated rheumatic conditions at that time, beyond the difficulty in walking, pain in walking, muscular pain. In regard to what examination I made at that time to determine whether or not this was rheumatism, well, I determined simply from symptoms; I made no physical examination, beyond questioning. I took largely her statement as to how she felt; and on this statement and without an examination I say now that in my opinion it was rheumatism. I thought so then, and her symptoms improved under the treatment given."

The plaintiff, Andy Mandoli, the beneficiary under the policy and the husband of the insured, testified that his wife had "a kind of a pain on the knee and leg and a kind of cold, and they found that there was a kind of rheumatism, a little cold or la grippe, or something like that, but nothing serious about it. That pain lasted two or three days, and in the meantime she showed a cold in the head. * * * She did not have rheumatism for more than a year, only rheumatism four or five days, a little pain two or three days at the most. * * * Dr. Sligh treated my wife for rheumatism and for hemorrhage of the nose at that time; two or three times, I guess. I do not think I was present when Mrs. McCallum rubbed my wife's limbs there on account of rheumatism; I

was there once, but I did not stay but a few minutes over there.''

Against the statement contained in the application of the insured that she had not, within five years previous to the making of her application for insurance, either consulted, or received treatment from, any physician or surgeon for "any illness, disease or injury," there is the testimony, above set out, of two attending physicians who had treated her for rheumatism, hemorrhages and menstrual disorders, and the unqualified admission of her husband that she had been attended by the physicians called as witnesses, and had received the medical treatment described by them. Considered in the most favorable light possible, the above incorrect statements of fact were material representations amounting to warranties, and, nothing else appearing in the record, if known to be untrue by the assured when made, invalidate the policy, without further proof of actual conscious design to defraud.

At the close of all the testimony the defendant moved for a directed verdict, upon the ground that the proof relating to the fact concerning the attendance of physicians upon the deceased was not contradicted, and was at variance with the statements made in her application for membership and medical examination, and the fact that the testimony of the physicians was not denied, raised a question of law to be decided by the court. The motion was denied. It should have been granted. There was nothing requiring the court to submit the case to the jury. The rule obtains, where the evidence [4] is in such a condition that, if the case should be submitted to the jury and a verdict for the plaintiff returned, it would be the duty of this court to set it aside, the motion for a directed verdict should have been granted. (*Escallier* v. *Great Northern Ry. Co.*, 46 Mont. 251, Ann. Cas. 1914B, 468, 127 Pac. 458; *Loudon* v. *Scott, ante,* p. 645, 194 Pac. 488.)

Proceeding thence with the trial, and consistent with the theory adopted and followed by the parties, the presiding judge, with characteristic clearness and ability, instructed the jury in conformity with the law above suggested, and, among

other instructions, gave the following: "The statements in the application which are made a part of the policy, are warranties of the truth of the statements therein contained; and if you believe from the evidence that any of said statements are untrue in any respect, whether material or immaterial, they avoid the policy and the plaintiff cannot recover. The truth of the statements contained in the application which are made a part of the policy is the basis of the contract between the parties to this controversy, and if you believe from the evidence that any of said statements in said application are untrue, then you must find for the defendant."

The defendant contracted to pay the policy upon the condition that the statements and warranties embodied in the application were true in fact, and not otherwise. By the showing made it appears they were untrue. Yet by the verdict and judgment each and every member of defendant society is to be subjected to the payment of his or her proportion of the face of the policy, in spite of the fact that neither by its letter nor its spirit did the parties contemplate any such thing. Upon the whole, we are unable to find a substantial conflict in the evidence upon the falsity of the statements warranted to be true, or to escape the conviction that sympathy played the major part in bringing about the verdict for the plaintiff.

The judgment and order appealed from are reversed and the cause is remanded to the district court of Deer Lodge county, with direction to dismiss the action.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HOLLOWAY, HURLY and MATTHEWS concur.