THOMAS STOCK *vs.* CITY OF BOSTON.

Suffolk.   March 11, 12, 1889. — June 20, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, & HOLMES, JJ.

*Action — Sewer — Negligence — Freezing of Water Pipe — Proximate Cause — Contract.*

A city, under contract with the owner of a greenhouse to supply him with water for steam-heating and for his plants, in constructing a sewer in an adjacent street caused the supply pipe to be uncovered and negligently exposed to the cold, so that the water in the pipe was frozen and his supply cut off. The

owner could not by the use of reasonable diligence obtain a supply of water or heat from other sources, and the plants were destroyed. *Held*, that the exposure of the water pipe was the proximate cause of the injury; and that the city was liable to such owner in tort for such damage, even if he might recover the same damages in an action upon the contract.

TORT for negligently exposing a water pipe connected with the plaintiff's greenhouse, while the defendant by its servants and agents was constructing a sewer in Minot Street, on December 2, 3, 1886, so that the water in the pipe froze, thus depriving the plaintiff of water for steam-heating in such greenhouse, and for use on his plants, whereby such plants were injured. Trial in the Superior Court, before *Lathrop*, J., who allowed a bill of exceptions, in substance as follows.

The plaintiff's evidence tended to show that the sewer was being constructed by one Gill, under a contract with the defendant, and that one Sheehan, by virtue of an appointment from the superintendent of sewers of the defendant city, acted as an inspector of Gill's work; that the plaintiff owned a greenhouse on Minot Street, and was a taker of Cochituate water from the city, and that the city water pipes which carried water to him ran through that street; that on Thursday, December 2, 1886, the weather was cold, the temperature being nearly at zero; that between eight and nine o'clock in the evening, the plaintiff discovered that the water had ceased to run in his greenhouse; and that he then went to the sewer trench and found the water pipe connected with the greenhouse exposed, and the trench open nearly fifty feet on either side of it. The plaintiff testified that the next morning he went again to the trench and notified the engineer that the pipe was frozen, and that he had no water in his greenhouse; and that he then spoke to Sheehan and Gill, who were standing near the trench, of the condition of the pipe, and the probable injury that would result to his property if it were not at once thawed out and protected; that, the pipe not having been thawed out, the plaintiff, on the Saturday morning following, went to the City Hall and notified the superintendent of sewers of its condition, and he directed that Gill be ordered to thaw out the pipe at once and protect it; that when the plaintiff went to the City Hall the flowers were considerably damaged; and that the pipe was not thawed

out until the Wednesday following, by which time the flowers were all ruined, with the exception of a few violets.  The plaintiff further testified that when he notified Gill and Sheehan that the pipe was frozen the flowers were not injured; that they agreed to attend to the pipe at once, and that he believed that they would do so; and that it was impossible for him to obtain water and convey it to his greenhouse and protect his property.

The defendant asked the judge to instruct the jury that the plaintiff could not recover for the following reasons:

" 1. Because the work of constructing the sewer was the work of public officers, and not of the agents of the city in its corporate capacity.

" 2. That the damages were too remote, the water pipe being the water pipe of the city, and the water which was frozen being the water of the city.

" 3. That the plaintiff's remedy, if any, was not for negligence in constructing the sewer, but for breach of contract in not supplying him with water."

The judge declined to give the instructions requested, but instructed the jury in substance as follows:

" The negligence alleged is in the not covering the pipe, or wrapping it so that it would not freeze; and, secondly, in not remedying the defect when there was ample time to remedy it before the plants were injured. . . . Now, gentlemen, if you believe the plaintiff's story on that point, as to the notice he gave, and as to the delay, you would be justified in finding that there was negligence and carelessness on the part of the agents of the city, and that the plaintiff would be entitled to recover, unless he was guilty of negligence, as I shall presently state to you.  If, on the other hand, you believe the testimony of the defendant, that this thing was remedied the moment it was called to the attention of the city, then your verdict will be for the defendant; because, if the plaintiff, after knowing that this injury occurred, did not see fit to call the attention of anybody to it, and have it remedied, that would be evidence of such negligence on his part as would authorize you in finding a verdict for the defendant that he was guilty of carelessness. . . . The defendant says that the plaintiff was guilty of negligence in not remedying this trouble, in not getting water from some-

where to water his plants and start up his boiler. Well, gentle-men, he has stated to you what efforts he made in that direction, and I instruct you that if he, by the exercise of due diligence, might have got water, then he would not be entitled to recover for the loss of his plants; because, if he could have remedied this trouble, and did not do so through his own lack of dili-gence, he cannot say that this large loss which was sustained was due entirely to the negligence of the city. . . . But if he exercised, — and that is a question of fact for you to determine, — if he exercised all due diligence, then the question comes whether or not the injury to the plants was too remote to be recovered in this action. Now upon that point there is testi-mony here that the agents of the city knew that that water pipe connected the greenhouse of the plaintiff with the main. There is no evidence that they knew it was necessary for the life of the plants that water should be used, but you will be authorized to find that they must have known that, from the general knowledge which everybody possesses as to the need of plants for water. If, therefore, the agents of the defendant knew that the water was cut off by freezing of the pipe, and knew that the water was necessary for the life of the plants, and the plaintiff has testified here that he told them everything would be destroyed unless they did do something, and they carelessly and negligently suffered the water to remain cut off for several days, and in consequence of that the plants were destroyed, then it does not seem to me that the damage is too remote for you to consider, but that the plaintiff is entitled to recover, if he used all due diligence in preventing it, under the principles of law which I have previously stated to you."

The jury returned a verdict for the plaintiff; and the de-fendant alleged exceptions.

*T. M. Babson,* for the defendant.

*E. B. Powers,* (*S. L. Powers* with him,) for the plaintiff.

MORTON, C. J. The servants of the defendant, in construct-ing a sewer in Minot Street, uncovered a water pipe running to the greenhouse of the plaintiff. The jury have found that they were negligent in leaving it exposed for several days, in severely cold weather; that this caused the water in it to freeze, and thus cut off the supply of water of the plaintiff. While a city or town

is not liable in tort for injuries caused by the plan or scheme of a sewer laid out by the board of aldermen, it is liable for the negligence of its servants in carrying out the plan in constructing the sewer. *Emery* v. *Lowell*, 104 Mass. 13. *Murphy* v. *Lowell*, 124 Mass. 564.

The defendant contends that as in this case the water pipe belonged to the city, and it had a contract with the plaintiff for his supply of water, his only remedy for the loss of water was upon such contract. The fact that the water pipe belonged to the city is not material. It was in the use and so far in the possession of the plaintiff that, if a stranger unlawfully interfered with it, to the injury of the plaintiff, he could maintain an action of tort. *Metallic Compression Casting Co.* v. *Fitchburg Railroad*, 109 Mass. 277. We think that the fact that the city had a contract with the plaintiff to supply him with water does not take away his right to sue in tort, even if the rule of damages is the same as in an action upon the contract. A mere breach of contract cannot be sued on as a tort, but for tortious acts, independent of the contract, a man may be sued in tort, though one of the consequences is a breach of his contract. *Ashley* v. *Root*, 4 Allen, 504. Suppose a lessor, who has covenanted to keep the leased premises in repair, should tortiously fire a cannon near the premises, breaking the windows, and otherwise injuring them. It would not be an answer to an action of tort to set up that the plaintiff had an action on the covenants of the lease. He could pursue either remedy. In the case at bar, the tortious acts of the city had no connection with, or reference to, its contract. They were independent acts, which gave the plaintiff a right to an action of tort, even if he had (which we need not decide) a concurrent remedy upon his contract.

The defendant contends that the damages suffered by the plaintiff were too remote. The damages were caused because the plaintiff, after the water was cut off, was unable to furnish water to his plants, and to supply his boiler with water, so as to heat the greenhouse. In *Derry* v. *Flitner*, 118 Mass. 131, it is said: "One who commits a tortious act is liable for any injury which is the natural and probable consequence of his misconduct. He is liable not only for those injuries which are

caused directly and immediately by his act, but also for such consequential injuries as, according to the common experience of men, are likely to result from his act. And he is not exonerated from liability by the fact that intervening events or agencies contribute to the injury. The true inquiry is whether the injury sustained was such as, according to common experience and the usual course of events, might reasonably be anticipated."

In the case at bar, the natural consequences of the tortious acts of the defendant in leaving the pipe exposed were that the water in it froze, the supply of the plaintiff was cut off, his means of furnishing water to the plants and heat to his boiler were destroyed, and his plants were killed. The jury have found that this happened without any negligence on the part of the plaintiff, as he could not, by the use of reasonable diligence, obtain a supply of water or heat from other sources. The case of *Metallic Compression Casting Co.* v. *Fitchburg Railroad*, 109 Mass. 277, is similar to the case before us. There the defendant negligently ran a train over a line of hose belonging to a third party, which the plaintiff was using to extinguish a fire in its factory. It was held that the severing of the hose was the proximate cause of the destruction of the building, and that the defendant was liable for its value. The instructions in this case were in accordance with the principles we have stated, and were correct.

*Exceptions overruled.*