SCHWAB, RESPONDENT, *v.* PETERSON, TRUSTEE, APPELLANT.

(No. 6,171.)

(Submitted September 22, 1927. Decided October 13, 1927.)

[260 Pac. 711.]

*Contracts—Drilling Oil Well—Construction—Contract of Employment—Parent and Child—Earnings of Minor—Quantum Meruit—Evidence—Directed Verdicts—Costs on Appeal.*

Contract for Drilling Oil Well—Construction.

    1. Under a contract between an oil company and the owner of a well-drilling outfit providing that the latter should be paid a lump sum for drilling a well and that after sixty days of operation he should be paid $10 per day for the outfit and $10 per day for services, *held* that the driller was entitled to the latter compensation only after sixty days of actual operations, excluding periods of delay not occasioned by the company.

Contracts—Words to be Understood According to Common Acceptation.

    2. Words used in a written contract must be construed according to their natural meaning and common acceptation, as persons of ordinary intelligence would understand them.

Parent and Child—Earnings of Minor—How Parent may Estop Himself from Claiming Them.

    3. While a parent is entitled to the earnings of a minor resulting from the obligation of support, the privilege may be waived either expressly or by conduct, such as making no objection to the employment, or where the parent testifies in support of the claim presented by the minor and assigned to and sued upon by another;

---

2.  See 6 R. C. L. 842.
3.  See 20 R. C. L. 607.

[80 Mont. 214.]

by so doing the parent estops himself from thereafter claiming the minor's earnings.

Quantum Meruit—Contract Price Conclusive Evidence of Value of Services Rendered—Error in Admission of Evidence Rendered Harmless by Instruction.

4.  Where a party on complete performance of an express contract sues on the quantum meruit, the contract price is conclusive evidence of the value of the services rendered; hence admission of testimony as to reasonable value is error, but where after receiving such testimony the court instructed the jury that recovery was limited to the contract price, the error was rendered nonprejudicial.

Trial—Directed Verdict—When Motion Should be Granted.

5.  A motion for a directed verdict in favor of defendant should be granted where the evidence is in such a condition that if the case were submitted to the jury and a verdict returned for plaintiff, it would be the duty of the court to set it aside.

Contracts of Employment—Statutory Provisions Relative to Performance of Work With Reasonable Skill and Diligence Become Part of Contract.

6.  A vital part of every contract of employment is the law of the state (secs. 7775, 7776, Rev. Codes 1921) requiring one employed to perform services under contract (drilling oil well), to perform those services in accordance with the usage in the community in which they are to be performed, to perform them with a reasonable degree of skill and with an ordinary degree of diligence and faithfulness.

Costs on Appeal.

7.  Where appellant is successful in maintaining his principal contentions on appeal he is entitled to his costs on appeal even though unsuccessful as to a small amount ($35) awarded to respondent.

[1]  Contracts, 13 **C. J.**, sec. 500, p. 537, n. 96.  Operation, 29 **Cyc.**, p. 1497, n. 45, 48 New.

[2]  Contracts, 13 **C. J.**, sec. 489, p. 531, n. 70.  Mines and Minerals, 40 **C. J.**, sec. 762, p. 1130, n. 15, p. 1131, n. 16, 25.

[3]  Estoppel, 21 **C. J.**, sec. 241, p. 1235, n. 33, p. 1236, n. 44. Parent and Child, 29 **Cyc.**, p. 1623, n. 43, p. 1625, n. 52, 53, p. 1626, n. 61, 62, p. 1627, n. 70.

[4]  Appeal and Error, 4 **C. J.**, sec. 2974, p. 992, n. 41.  Contracts, 13 **C. J.**, sec. 908, p. 749, n. 62.  Trial, 38 **Cyc.**, p. 1518, n. 69.

[5]  Mines and Minerals, 40 **C. J.**, sec. 762, p. 1131, n. 25.  Trial, 38 **Cyc.**, p. 1571, n. 16, p. 1576, n. 35, p. 1578, n. 40, p. 1579, n. 45.

[6]  Contracts, 13 **C. J.**, sec. 523, p. 561, n. 38.  Master and Servant, 39 **C. J.**, sec. 161, p. 123, n. 15.  Mines and Minerals, 40 **C. J.**, sec. 760, p. 1128, n. 97.

[7]  Costs, 15 **C. J.**, sec. 603, p. 243, n. 48.

*Appeal from District Court, Toole County; John J. Greene, Judge.*

Action by J. B. Schwab against J. B. Peterson, trustee, and another.  From a judgment in favor of plaintiff against the

5.  See 26 R. C. L. 1067.

named defendant, the latter appeals. Reversed in part and affirmed in part.

*Mr. Louis P. Donovan*, for Appellant, submitted a brief and argued the cause orally.

*Messrs. Harris & Hoyt*, for Respondent, submitted a brief; *Mr. G. G. Harris* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal from a judgment in favor of plaintiff. Action was commenced by J. G. Schwab against J. B. Peterson, trustee, and the Eagle May Oil Company, by the filing of a complaint containing three causes of action, the first of which united claims for (a) $1,200 for the use of an oil well drilling rig; (b) for services performed as driller, $1,200; (c) money paid for the use and benefit of defendants, $40; and (d) for $300 damages for a failure to place the latter amount in escrow for plaintiff. The second cause of action is for $75 due Iva Schwab for services, and the third for $35 due Earl Doughty for services, the two last claims having been assigned to plaintiff.

The defendants joined in a general denial. The cause was tried to the court with a jury, and, at the close of plaintiff's case, defendants separately moved for judgment of nonsuit. The motion on behalf of the company was sustained and the case dismissed as to it; that on behalf of Peterson, trustee, was denied, and the cause proceeded against him alone. It resulted in a verdict and judgment in favor of plaintiff (a) on the first cause of action for $1,431, (b) on the second cause of action for $75, and (c) on the third cause of action for $35, with interest on each sum from May 15, 1925. Defendant moved for a new trial, which motion was denied.

The first cause of action sought recovery upon quantum meruit, but plaintiff's proof disclosed at the outset that the

services alleged were performed and the rig rented under a written contract of date November 15, 1924, by the terms of which plaintiff leased a "Keystone" drilling rig to Peterson, trustee, to be by him moved on to the location named and there used for the drilling of an oil well, Peterson to furnish all labor, supplies, and necessary additional tools, to assume all risk and damage to the rig, and to replace lost and broken tools, and, after the well was drilled, to return the rig to the place where found. For the faithful performance of this last provision he was to place $300 in escrow.

Schwab agreed to "render services in the drilling" of the well "as head driller and to run one of the towers during the drilling of said well until the said well is drilled to the Madison limestone formation, or oil in commercial quantities is found at lesser depth." As compensation for the use of the rig and for the services of Schwab, Peterson, trustee, agreed to pay Schwab $2,000 in four installments, the first on the execution of the contract, the others as the well reached certain depths.

The important provisions of the contract, so far as this action is concerned, are found in paragraph 5, dealing with contingencies, which reads, in part, as follows: "If operations on the drilling of said well are delayed by reason of the failure of the party of the second part to furnish tools, * * * then the party of the second part shall pay to the party of the first part the sum of $10 per day for each twenty-four hours * * * for which operations are closed down. * * * When the said well is completed the party of the second part shall have the right to use said rig for to test said well by paying $10 per day, and, if it be found that the well is not a commercial producer, said party of the second part shall have the further use of said rig for the pulling of casing * * * at once at $10 per day. It is further understood that the party of the second part is to pay to the party of the first part after sixty days of operation $10 per day for the rig and $10 per day for the party of the first part."

The four installments, totaling $2,000, were paid in accordance with the contract and the first cause of action is predicated upon the final clause of paragraph 5, quoted above, and on the interpretation thereof depends the solution of many of the questions presented on this appeal.

Plaintiff's interpretation, as voiced by his counsel in the lower court and here, is, in effect, that the contract required him to furnish the rig and act as head driller, without condition as to how the work should proceed, and entitled him to compensation for each day which elapsed between the fifteenth day of January, 1925 (sixty days after the date of the contract), and the final completion of the well on the fifteenth day of May, 1925, regardless of the cause of delays in the prosecution of the work.

Counsel for defendant insists that the contract calls for the exercise of reasonable skill and diligence on the part of Schwab in operating the rig and drilling the well and provides for compensation, over and above the $2,000, only in the event the actual drilling of the well required more than sixty days of operation, regardless of the time which elapsed between commencement and completion of the well.

1. It will be noted that the contract provides for the [1] payment of $10 per day during periods when the plaintiff was caused loss of time by reason of the default of the defendant, and for the payment of $10 per day for the use of the rig in testing the well and pulling the casing, after completion of the well, and, further, that the final clause of paragraph 5 specifically provides for additional compensation after sixty days "of operation."

The contract was made at the beginning of the winter season, when weather conditions might at any time become such that drilling would be held up for an indefinite period of time. With this condition before them, the parties made no provision regarding delays from this cause, but did provide for other contingencies, and it would seem that the rule, "*Expressio unius est exclusio alterius,*" would apply, and that thereunder

the provision for compensation during delays caused by the default of the defendant would exclude recovery for time or the use of the rig during periods of delay occurring through other causes; that the provision for additional compensation after sixty days of operation would exclude recovery for days when the parties were not operating.

"Operation" is defined as "The state of being in action; some special kind of activity; manner of action; the action of working or operating, as a machine, railroad, business enterprise." (Standard Dictionary.) In *Solberg* v. *Sunburst Oil & Gas Co.*, 73 Mont. 94, 235 Pac. 761, this court, speaking through Mr. Justice Galen, said: " 'Operation' is defined by Webster in general as the 'act, process, or effect of operating'; the 'method or way of operating or working; mode of action or form of activity'; the 'state of being operative or in action, as a new railroad will be soon in operation'; the 'act of operating, or putting into or maintaining in action, as the operation of a machine.' "

Words are to be construed according to their natural meaning and common acceptance; as persons out of court and [2] of ordinary intelligence would understand them. (*Daniel* v. *Moncure*, 58 Mont. 193, 190 Pac. 983.) Therefore, when the parties used the phrase "days of operation" they must have intended something more than mere lapse of time. Had they intended the latter, they would undoubtedly have fixed the date from which such additional compensation should run.

The "operation" referred to may include other activities than actual drilling, such as fishing for tools, shutting out water when encountered, and the like; but, under the contract, it devolved upon the plaintiff to show that the completion of the well consumed more than sixty days of actual operation of an active character, in order to recover in this action.

2. Defendant's first assignment is that the court erred in denying his motion for nonsuit as to the first cause of action. Counsel asserts that there was a failure of proof in many par-

ticulars, chief of which was that there was no showing that the well was drilled to the Madison limestone formation.

The testimony on the part of the plaintiff is meager. The plaintiff himself was not present at the trial and his whereabouts were unknown. His counsel depended almost entirely on the testimony of plaintiff's wife to establish the allegation of his complaint. Mrs. Schwab testified that the contract was actually executed on October 22, 1924, but was dated November 15 in order to give Peterson time to move the rig and set it up, and November 15 was agreed upon as the date of commencing operations, although as a matter of fact the well was spudded in several days earlier; that plaintiff worked as head driller and ran one of the towers during all of the operations except for five or six days when he was sick; that the sixty days' period expired on January 15, 1925, but that the well was not completed until May 3, 1925, and that thereafter Schwab, at the direction of Peterson, pulled the casing, completing this work on May 15; that Schwab worked for Peterson "all of the time" from October 22, 1924, to May 15, 1925. The witness further testified that the well was drilled "into the Ellis sand" and that "they did some drilling after they were through the Ellis, but I couldn't say the depth of it"; that Peterson was present at the completion of the well, accepted it as a completed job, and ordered it abandoned as a nonproducer. She further testified that, at a later date, Schwab asked Peterson why he had not come out to settle with him, and that Peterson said he did not have the money, but would give the casing as security; this was not satisfactory to plaintiff and Peterson thereafter promised to come out and settle that afternoon.

On cross-examination the witness stated that "operations closed down" from December 14, 1924, to February 9, 1925, but that they "were ready to start up at any time it was satisfactory weather"; that there was a shutdown of a week or ten days in April, 1925, "for casing"; and that "they had several other shutdowns." In redirect examination she testi-

fied that, during the time operations were closed down on account of the weather, plaintiff ''was there on the job ready to do anything'' and was ''watching the boiler and keeping things from freezing.''

The testimony that defendant was on the ground, accepted the well as a completed one, and ordered its abandonment, tends to show that the well was drilled to the depth required by the contract and was sufficient to make out a prima facie case. While shutdowns were admitted, the total period covered by the operations, according to the testimony of the witness, was more than six months, during which time plaintiff was ''working all of the time.'' The evidence, as a whole, therefore, tended to show facts on which plaintiff was entitled to a verdict in some amount, and the court did not err in denying the motion for nonsuit.

3. The second assignment predicates error upon the denial of the motion for nonsuit as to the third cause of action.

The evidence disclosed that one Earl Doughty, of the age of [3] fifteen years, performed services in the unloading of casing of the value of $35, which claim was assigned by Doughty to plaintiff. It further disclosed that Doughty was the minor child of Mrs. Schwab and that his father was dead. Counsel contends that, under the provisions of sections 5834, 5848 and 5849, Revised Codes of 1921, which, in effect, provide that the earnings of a minor belong to the parent unless relinquished to the child, and that an employer may not pay wages to a minor unless or until the parent gives notice to the employer that he (or she) claims them, Mrs. Schwab alone could maintain an action for Doughty's earnings.

While a parent is entitled to the earnings of a minor resulting from the obligation of support, the privilege may be waived by the parent and the waiver may be either by express agreement or by conduct, such as making no objection to the employment (*Culberson* v. *Alabama Construction Co.*, 127 Ga. 599, 9 Ann. Cas. 507, 9 L. R. A. (n. s.) 411, 56 S. E. 765); or, where the parent entitled to claim the earnings testifies in

support of the claim in the name of the child, the action will be held to have been properly brought in the name of the child (*Scott* v. *White*, 71 Ill. 287; *Aulger* v. *Badgely*, 29 Ill. App. 336).

As the employer is liable and must pay someone, his only concern should be that the payment exacted settles the claim so that he may not again be called upon to pay it. When Iva Schwab, the only person who could claim a right to the minor's wages, appeared and testified on behalf of the claim presented by the plaintiff, she estopped herself from thereafter claiming those earnings (*Smith* v. *Smith*, 30 Conn. 111; *Boulton* v. *Black*, 68 Ind. 269), and the defendant was fully protected from a second presentation of or suit upon the claim. The court, therefore, properly denied the motion for nonsuit.

4. It is next contended that the court erred in permitting a [4] witness to testify as to the reasonable value of the use of the rig.

"The effect of proof of the express contract is to make the stipulated compensation the *quantum meruit* in the case." (*Wilcox* v. *Newman*, 58 Mont. 54, 190 Pac. 138.) "The contract is conclusive evidence of the value of the work specified." (13 Ency. of Evidence, 584; *Ingle* v. *Jones*, 2 Wall. (U. S.) 1, 17 L. Ed. 762.) It was, therefore, error to admit the evidence referred to; but, as the court thereafter instructed the jury that the right of recovery was limited to the contract price, the error was nonprejudicial and would not warrant a reversal of the case.

5. The fourth assignment is that the court erred in refusing to instruct the jury to return a verdict in favor of defendant.

In addition to the evidence on the part of plaintiff heretofore summarized, a witness on behalf of the plaintiff testified that the ordinary time for drilling a well in the field in question from the time of spudding in until drilled to the Madison limestone formation was approximately thirty days.

Evidence adduced for the defendant showed that no unusual formation was encountered in the drilling of the well,

nor did they at any time experience any unusual difficulty or trouble; that it was the custom in the field to run two towers of twelve hours each per day; that the usual depth attained in drilling wells in the field was from fifty feet to a tower up; and that it was the duty of the head driller to keep a log of the operations. Witnesses testified that Peterson demanded of Schwab that he keep a log of the well, but that Schwab refused to do so and thereupon Peterson caused Hagen, the alternate driller, to keep the log. From the log kept it appeared that there were many shutdowns, most of them for no apparent reason, and that on many days but one tower was run.

One Grinley, one of the tool dressers at the well, was asked if he had computed the actual number of days of operation, as shown from the log. He replied that he had and that the total number of days of operation from the commencement until the well was completed was but fifty-six and one-half. After the question was answered an objection was interposed, and, after considerable argument, the objection was sustained, but no motion was made to strike the answer, and it stands in the record. Hagen, who kept the log, testified to like effect. Hagen testified that Schwab did not use the same stroke as the other driller, and, consequently, did not make as much hole on tower as did the other driller; that the average hole made on a tower while drilling the well was but fifteen to eighteen feet; and that Schwab could have made fifty feet per tower, had he used the longer stroke and more speed. Witnesses testified that on several occasions Schwab had said that he did not care whether the well was completed or not, and that on one occasion he said that it never would be completed.

Peterson testified that he repeatedly remonstrated with Schwab concerning shutdowns and lack of speed, and that Schwab would always promise that progress would be no longer delayed, and that "time and again" he said: "You don't need to worry about that, because I know there have been too many shutdowns and what you have done with me. I am not going

to charge you any more than the original price of the contract, because you fed my family through the whole winter when we weren't working and through all shutdowns.'' Peterson denied that he ever made a promise of settlement.

The only rebuttal testimony was that of a driller who worked on the well for a period of fifteen days during March and April, during which time plaintiff was sick and not working for at least five days. He testified that while he was observing operations the rig was run about as fast as was safe with that rig; but whether the rig was then run in the same manner it had been theretofore or not does not appear.

There was no evidence of operations other than drilling operations, except that at one time they had to shut out water; but whether that operation delayed drilling for any substantial period of time does not appear.

In answering defendant's argument to the effect that the evidence was insufficient to go to the jury, counsel for plaintiff assert (a) that ''there was abundant evidence to warrant the jury in reaching the conclusion reached by it unless by the 'sixty days' operation' is meant sixty days of actual movement of the drill in making hole,'' and (b) admitting that the contract contained such a provision, there is at least a conflict in the evidence, while (c) the defense relied upon the testimony of Hagen, who was ''wholly discredited.''

(a) We have already disposed of the question of the construction of the contract.

(b) Counsel's assertion that Hagen was ''wholly discredited'' is based upon admissions on cross-examination to the effect that the computation as to the number of days of operation was made for the purpose of trial, but from data contained in the log, and that the number of towers run a day was not always entered in the log on the same day, but later entered in accordance with the work done that day. The witness testified that all of the entries made were correct, as was also the computation, and we see nothing in this testimony to discredit the witness or warrant disregarding his testimony.

[80 Mont. 214.]

He kept the log accurately, as he stated, and, as a driller, was familiar with the work done. He should have been able to determine from his entries the time consumed in the work and to make an accurate statement as to that time, whether he made his computation at the time, at a later date, or while he was on the stand.

(c) We have no quarrel with the rule that if there is any substantial evidence to warrant a verdict in favor of the plaintiff, and if the evidence is conflicting a court should not direct a verdict. On the other hand, where the evidence is in such a condition that, if the case should be submitted to the jury and a [5] verdict be returned in favor of the plaintiff, it would be the duty of the court to set it aside, such a motion should be granted. (*Mandoli* v. *National Council,* 58 Mont. 671, 194 Pac. 493.) After a careful examination of the whole record we are convinced that the latter and not the former condition exists in this case.

While Mrs. Schwab testified that the work went on for a period of six months, her testimony referred to time and not to operations. Witness the fact that she testified that the sixty-day period expired January 15, 1925, or just sixty days after the date of the contract, while she admitted that all operations were shut down from December 14, 1924, to February 9, or 11, 1925, and that there were other shutdowns of unstated number and duration. All of the testimony on behalf of the plaintiff was given on the theory that the duration of shutdowns and the actual time consumed in operations conducted for the purpose of drilling a well were matters of no importance and that plaintiff was entitled to recover for the time elapsing after the first sixty days. The defense followed by accurate and detailed statements, gleaned from the daily record kept, thus filling in the blanks left in plaintiff's testimony. The two do not conflict, but rather supplement each other. Taking all that Mrs. Schwab said at its full face value and adding thereto the testimony as to what actually transpired during the six months' period she covered, does the evi-

dence warrant the verdict rendered, or would this court be compelled to set the verdict aside? The only direct conflict in the evidence concerns a promise of settlement.

Mrs. Schwab's statement was vague and at best tended to prove an oral admission of indebtedness in some amount concerning the subject matter of the contract. It does not show an admission that Peterson was owing any part of the recovery awarded in the verdict. It may have referred to rental on the rig for use in testing the well or pulling the casing or to money due for returning the rig to plaintiff's home, all of which fall outside the $2,000 consideration for drilling the well and do not come within the provision for overtime. On these latter items there is no testimony on which a verdict could be rendered. It does not appear in the record who, if any one, returned the rig or the reasonable expense thereof; and, while Mrs. Schwab testified that Schwab worked with his rig in pulling casing, there is nothing in the record to show whether the operation took five days, one day, or a part of a day. Mrs. Schwab's statement that the sixty-day period expired January 15, 1925, was not a statement of fact, but a legal conclusion improperly in the record (without objection), and could not constitute a conflict with evidence adduced on the part of the defendant.

Viewing the evidence, as a whole, in the light of the construction we have given to the contract, it establishes, without material conflict, the following facts: The plaintiff was employed to perform, within sixty-days of operation, a job which was usually performed in the field where he was working in thirty days, if no unusual conditions were encountered. He drilled a well 1,732 feet in depth and could with his rig make 100 feet of hole a day, or the whole depth in less than eighteen days. No unusual conditions or difficulties were encountered and thirty days elapsed between the commencement of operation and the first shutdown. If the well was completed within sixty days of operation, plaintiff was to receive $2,000 in full

settlement for his services and the use of this rig in drilling the well. The actual days of operation numbered but fifty-six and a half, and plaintiff was paid the full sum of $2,000.

Had the proof been forthcoming, plaintiff might have rightfully recovered a small amount for the use of his rig and perhaps for services in pulling casing in addition to the $2,000, but there is no proof in the record warranting such recovery. By his allegation and proof he was content to stand or fall on his theory that he was entitled, under his contract, to take all the time he saw fit and could recover for each day consumed in either operations or idleness, after the expiration of the first sixty days from the date of the contract.

A silent, though binding, part of plaintiff's contract, is the **[6]** law of the state which requires one employed to perform services under contract, to perform those services in accordance with the usage in the community in which they are to be performed, and to perform them with a reasonable degree of skill (secs. 7775 and 7776, Rev. Codes 1921), and with an ordinary degree of diligence and faithfulness. (39 C. J. 123.)

Counsel for plaintiff contend that, as defendant visited the scene of operations almost daily and finally accepted the benefits of the services performed, he cannot now complain; but it must be remembered that he had given plaintiff sixty days of operation in which to complete the well, and, so long as the operations did not consume more than sixty days, he was in no position to assert a breach of the contract providing, as it did, no period within which the well should be completed.

On the showing made, the court should have granted the motion for a directed verdict as to the first cause of action. Failure to do so constitutes reversible error.

For the reasons stated, the judgment is reversed as to the first cause of action, and the cause is remanded to the district court of Toole county, with direction to dismiss as to that cause of action. The judgment on the second and third causes of action is affirmed.

As the only item on which the defendant failed to maintain [7] his position on this appeal (the $35 recovery on the third cause of action) is trifling, it is ordered that the defendant recover his costs on appeal.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES STARK, MYERS and GALEN concur.

Rehearing denied November 1, 1927.