GARDEN CITY FLORAL CO., INC, Respondent, v. HUNT, ET AL., Appellants.

No. 9136

Submitted January 7, 1953. Decided March 26, 1953.

255 Pac. (2d) 252.

Mr. Ralph J. Anderson, Helena, for appellants.
Messrs. Smith, Boone & Rimel, Missoula, for respondent.
Mr. Anderson and Mr. Russell E. Smith argued orally.

MR. JUSTICE ANGSTMAN:

Defendants have appealed from a judgment rendered against them on a verdict in favor of plaintiff in the sum of $18,655.

Plaintiff owns two tracts of land in the city of Missoula. On the easterly tract, prior to September 1950, there was a building known as the Bedard building. On August 25, 1950, plaintiff entered into a written agreement with defendant Hunt by the terms of which Hunt agreed to erect a building on the westerly tract using the west wall of the Bedard building as the east wall of the new building. The contract expressly recited that the specifications and drawings were a part of the contract as if attached thereto or repeated therein. According to the drawings or specifications the new building was to have a 12-

foot basement and the west wall of the Bedard building was to be underpinned with concrete in four-foot blocks along its entire length. Defendant Hunt was required to and did furnish a performance bond executed by defendant Continental Casualty Company as surety.

Shortly after the making of the contract defendant Hunt commenced the excavation for the new building, using a bull dozer for that purpose. As a result of the excavation the west wall of the Bedard building collapsed and fell into the excavation. Plaintiff, believing that the Bedard building could not be repaired, caused it to be torn down. This action seeks recovery for damages suffered by plaintiff as the result of the loss of the Bedard building and for indemnity to plaintiff for damages which it may be required to pay to tenants of the Bedard building because of damages sustained by the tenants.

The complaint consists of two causes of action. In the first cause of action it is alleged that defendant Hunt did not use a reasonable or any degree of skill in making the excavation in that he dug a trench along the entire west wall of the Bedard building, deeper than the bottom of the foundation of the Bedard building, and so close to it that the earth and dirt under the foundation slid into the trench; that because thereof the west wall was deprived of lateral support as well as support of the ground upon which it had previously rested and that it therefore fell of its own weight.

The second cause of action alleges that the drawings for the building called for underpinning of the wall of the Bedard building in four-foot blocks along its entire length; that in the contracting business this meant that the excavation should be done in alternate four-foot strips so that each excavated section has a four-foot strip of earth on each side of it; that when a four-foot section is excavated, concrete is poured and allowed to set and that after one section of concrete is poured another excavation of a four-foot strip is made and poured and thus the wall is never deprived of support along its whole length. It is alleged that defendant Hunt breached this part of his contract

and dug the trench along the entire length of the wall and dug it deeper than the bottom of the foundation under the Bedard wall and so close to it that the earth under the foundation slid into the trench and the wall was deprived of support causing it to fall of its own weight; that had defendant Hunt used the method of underpinning set out in the drawings the excavation would have been made without damage to the wall.

One question presented by the appeal is whether plaintiff may maintain this action against defendants for such damages where it predicates liability because of the unskillful and neglectful manner in which defendant Hunt performed the excavating resulting in the collapse of the Bedard building.

Defendants take the view that if there be liability for such damages, it must sound in tort and not for breach of contract. Defendant Casualty Company contends that it is not liable for the damages complained of because such damages were not intended to be within the coverage of the bond. Another contention is that plaintiff failed to provide a duly qualified architect, with full supervisory authority and hence that plaintiff did not comply with its part of the contract and that such failure on the part of plaintiff operated to release the Casualty Company.

The bond contains this provision: ''Now, therefore, if the Principal shall faithfully perform such contract * * * and shall indemnify and save harmless the Owner from all costs and damages by reason of the Principal's default or failure so to do, then this obligation shall be null and void; otherwise it shall remain in full force and effect.''

The Casualty Company contends that the terms of the bond do not cover costs and damages arising from the manner in which Hunt performed the terms of his contract. It relies upon National Surety Co. of New York v. Ulmen, 9 Cir., 68 Fed. (2d) 330. In that case it was a third party and not a party to the contract of suretyship who brought the action. What was said in that case must be confined to the facts then before the court.

Here the surety contracted that Hunt would faithfully per-

form his contract and indemnify and save plaintiff harmless from all costs and damages by reason of his default or failure so to do.

A contract of employment carries with it the obligation to do the work in a reasonably skillful manner. Williston on Contracts, Rev. Ed., Vol. 4, sec. 1014, p. 2792; 38 Am. Jur., Negligence, sec. 20, p. 662. This is also the effect of our statutes, R. C. M. 1947, secs. 41-208 and 41-209. And see Schwab v. Peterson, 80 Mont. 214, 260 Pac. 711.

In the note in 12 L. R. A., N. S., 924, the rule is stated as follows: "Whenever a negligent breach of a contract is also a violation of a common-law duty, an action *ex delicto* will lie. Accompanying every contract, is a common-law duty to perform the thing agreed to be done with care, skill, reasonable expediency, and faithfulness, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract." To the same general effect are: Roscoe Moss Co. v. Jenkins, 55 Cal. App. (2d) 369, 130 Pac. (2d) 477; Maloney Tank Mfg. Co. v. Mid-Continent Petroleum Co., 10 Cir., 49 F. (2d) 146.

Counsel for the Casualty Company stresses the statement made by plaintiff's witness, John E. Hightower, to the effect that every contractor has his own method of doing his work. In addition to that statement Mr. Hightower also testified in substance that in underpinning a wall with concrete piers you would not excavate the whole length of the wall but only in three or four-foot sections leaving soil between each pier; that there would never be more than three or four feet of foundation exposed at any given time; that is what the drawing means when it specifies that the underpinning shall be in four-foot blocks.

There is ample evidence in the record to warrant a finding that defendant Hunt did not perform his contract in that he failed to comply with the drawings requiring underpinning in four-foot blocks and that therefore there was a breach of his contractual obligation. The only reason for requiring under-

pinning in four-foot blocks was to safeguard the west wall of the Bedard building.

The record shows that in doing the underpinning in the manner required there would never be more than four or five feet of the foundation wall without support; that in making the excavation the digging should not be so close to the wall as to deprive the foundation of its support; that the digging may proceed below the foundation wall if dirt is allowed to remain between the trench and the wall to give support to the wall.

It was contemplated in the contract that defendant Hunt should excavate for the basement of the new building. It was likewise contemplated by the parties to the contract that injury to the west wall of the Bedard building might result unless it was properly underpinned; likewise it was reasonably within the contemplation of all parties to the contract that if the west wall of the Bedard building were permitted to collapse it would most certainly cause damages to the entire building supported by the west wall.

It was these considerations that led to the requirement that the wall be underpinned in four-foot blocks. The parties were contracting against possible damage to the west wall and to the building which it supported. Failure to comply with that contract rendered defendant Hunt liable in an action for breach of contract. The case is very similar to that of Samuel v. Novak, 99 Md. 558, 58 A. 19, which involved the question of underpinning a wall. In that case the action was in tort for damages due to alleged negligence in excavating below the foundation walls of adjoining property causing the property to collapse and fall in. The court held it was proper to instruct the jury that if the damage sustained by plaintiff was occasioned by defendant's failure to perform a contract entered into between plaintiff and defendant for the protection of plaintiff's property, then they must find for defendant. The test therefore is whether plaintiff is relying on tort or proceeding on the theory that Hunt failed to faithfully perform his contract.

Likewise Hunt's failure to perform the work with reasonable

skill constituted a breach of his contract. The authorities recognize that there may be liability in certain cases both in tort and for breach of contract. See 1 Am. Jur., Actions, sec. 51, p. 443.

The statement of the rule made in the note in 12 L. R. A., N. S., p. 926, is as follows: "Based upon the principle above indicated, the firmly established rule is that, for injuries resulting from the unskilful, or otherwise negligent, performance of a thing agreed to be done, an action *ex delicto* will lie, notwithstanding the act complained of would also be ground for an action *ex contractu.*"

In Dixon v. Texas Co., S. C., 72 S. E. (2d) 897, 899, the court stated the rule as follows: " 'Although there is a broad distinction between causes of action arising ex contractu and those arising ex delicto, the dividing line between breaches of contract and torts often lies in a twilight zone, where it is difficult to determine whether the case applies strictly to the one or to the other. There is no certain test by which the Court can be guided in determining whether a particular action is ex delicto or ex contractu.' Shaw v. Great Atlantic & Pacific Tea Co., 189 S. C. 437, 1 S. E. (2d) 499, 500.

"Under certain circumstances, a ground of liability in tort may coexist with a liability in contract, giving the injured party the right to elect which form of action he will pursue. Ordinarily, where there is no duty except such as the contract creates, the plaintiff's remedy is for breach of contract, but when the breach of duty alleged arises out of a liability independently of the personal obligation undertaken by contract, it is a tort. Rosenthal & Doucette, Inc., v. United Last Co., D. C., 33 F. Supp. 213. 'As a general rule, there must be some active negligence or misfeasance to support tort. There must be some breach of duty distinct from breach of contract.' Tuttle v. Gilbert Mfg. Co., 145 Mass. 169, 13 N. E. 465, 467. In 1 C. J. S., Actions, sec. 49(c), it is stated that 'active negligence or misfeasance is necessary to support an action in tort based on a breach of contract; mere nonfeasance, even if it amounts to a willful neglect to perform the contract, is not sufficient.' We

have consistently held that 'allegations of negligence cannot have the effect of changing the essential features of the transaction so as to convert a mere breach of contract into a tort', Farmers' Union Mercantile Co. v. Anderson, 108 S. C. 66, 93 S. E. 422, 424, and that 'the nature of the action as ex contractu is not affected or changed by the fact that there are also allegations in regard to tortious conduct on the part of the defendant'. Shaw v. Great Atlantic & Pacific Tea Co., supra.''

The court in that case also said: ''But even if the question be regarded as a doubtful one, the doubt must be resolved in favor of an action ex contractu.''

When the facts warrant either form of action plaintiff may elect as to which he will pursue. Nevin v. Pullman Palace Car Co., 106 Ill. 222, 46 Am. Rep. 688; Stock v. City of Boston, 149 Mass. 410, 21 N. E. 871, 14 Am. St. Rep. 430; Henderson v. Lincoln Rochester Trust Co., 198 Misc. 82, 100 N. Y. S. (2d) 840.

Counsel for the Casualty Company contend that the evidence bearing upon the question of the meaning of the phrase ''underpinning in four-foot blocks'' and as establishing a definite practice was confusing and contradictory. We do not so regard it. The witnesses were in agreement that to underpin in four-foot blocks a contractor would not excavate along the wall a distance of 40 to 60 feet at a depth below the foundation wall; that no more than four feet of the wall should be exposed at any time; that the plan pursued by defendant Hunt by excavating below the foundation wall and close to it as shown by exhibit No. 14-A which was a photograph taken after the collapse of the wall was not the method customarily employed in excavating for underpinning in four-foot blocks.

The next point urged by the Casualty Company is that plaintiff breached that part of the contract providing that ''the contract, including the completion thereof after default, if any, shall be prosecuted under full supervision of a duly qualified architect.''

The record shows that R. C. Hugenin was employed as the architect. Plaintiff in its reply alleged ''that the said

architect had no authority to in anywise control the method of doing any of the work under the contract.'' The evidence offered by plaintiff supports the allegation of the reply that the architect had no authority to supervise the manner in which the work under the contract was performed. He had general supervision over the workmanship and materials used with authority to see to it that they conformed with the specifications. His function, according to the record, was to concern himself with the results but not the method of achieving them. Because of this, defendant Casualty Company contends there was a breach of the obligation of full supervision, required by the contract. This conclusion does not follow. The architect had full supervision over the result to be accomplished by the contractor. In other words, his supervision over the results was not only partial, in the sense that he had to share it with another, but it was full and complete. To say that he must supervise the method of doing the work before there is full supervision would place the architect in an entirely different role from that of an architect. The use of the word ''full'' in characterizing the kind of supervision adds nothing, except as above noted and does not extend the supervision so as to embrace the matter of supervising the method and means of doing the work.

Not only does this appear from the evidence in this case but as a matter of law the courts recognize that an architect merely supervises the results and does not dictate the methods when not controlled by the specifications. Charles Meads & Co. v. City of New York, 191 App. Div. 365, 181 N. Y. S. 704; Starkweather v. Goodman, 48 Conn. 101, 40 Am. Rep. 152; Reifsnyder v. Dougherty, 301 Pa. 328, 152 A. 98; Humpton v. Unterkircher, 97 Iowa 509, 66 N. W. 776; Leverone v. Arancio, 179 Mass. 439, 61 N. E. 45.

Had no architect at all been employed then the case might have been ruled by what was inferentially assumed in Noonan v. Independence Indemnity Co., 328 Mo. 706, 41 S. W. (2d) 162, 76 A. L. R. 931, and National Surety Co. v. Lincoln County, 9 Cir., 238 F. 705, relied on by defendant company.

But as above noted, in the instant case there was compliance with the contract in the employment of a competent architect and this the defendants admit in their answers. The contention that his power and authority were limited and restricted contrary to the contract is unwarranted. Some point is made that Hunt testified that Hugenin told him to keep excavating near the foundation after the dirt had been removed below the foundation wall of the Bedard building, but this was denied by Hugenin and hence that testimony cannot be taken as establishing the fact.

Defendant company also contends that the requirement of the contract for full supervision by an architect was breached because at the time in question the license of Mr. Hugenin to practice architecture in Montana had expired for nonpayment of the annual license fee and the same had not been reissued or renewed.

Mr. Hugenin, according to the record, has practiced architectural engineering since 1907 and held a license in Montana ever since the law required one, which he thought was since 1922. The fact that his license had expired was a collateral matter which did not affect the liability of the defendants or the fulfillment of plaintiff's obligation to employ a reasonably competent architect. Whether he possessed a license or not did not affect his qualifications as an architect.

From what has been said it was not error for the court to instruct the jury that plaintiff was not obligated to provide an architect with full authority to supervise the method of making the excavation and underpinning in question, and in refusing to instruct the jury that a verdict must be rendered for defendant company unless the jury finds that the work was prosecuted under the full supervision of a duly qualified architect. Nor was it error to instruct the jury that if they find defendant Hunt failed to perform his construction contract they must find against both defendants.

Defendants contend that the court erred in permitting plaintiff's exhibit 1 to be received in evidence. This exhibit

consisted of the bid sheet and the specifications. The exhibit went in without objection except the general objection that the complaint was insufficient to constitute a cause of action against the defendant company. That objection as above noted was without merit.

Defendants contend that the court erred in giving instruction No. 2 relating to the measure of damages. In substance the jury was told that if they found that the building could not be restored then the damages would be the value of the building plus the loss of rental for four months plus the reasonable cost of demolition not exceeding $27,406.66. Defendant objected to the instruction on the ground that it eliminated from the jury's consideration the element of the value of salvage. The evidence relating to salvage was indefinite. There was evidence that some glass and plumbing fixtures were salvaged as well as some warped, broken and crooked timbers, but the record does not indicate what, if any, value they had or the quantity of the materials.

Matter in mitigation of damages is a defense, R. C. M. 1947, sec. 93-3411, and the burden of pleading and proving it rests with the defendant. Compare Miller v. Yellowstone Irr. Dist., 91 Mont. 538, 9 Pac. (2d) 795; McKim v. Beiseker, 56 Mont. 330, 185 Pac. 153.

There was nothing in the record from which the jury could have fixed a value on the salvage and in consequence the court did not err in giving the instruction on damages without any reference to the question of the salvage.

Defendants complain of the court's refusal to instruct the jury to disregard certain remarks made by counsel for plaintiff in his argument to the jury. The remark complained of was this: "This is like a health and accident or an ordinary insurance policy." Counsel for the defendant company objected to the remark and requested the court to instruct the jury to disregard it. The court refused to do so and counsel for plaintiff then proceeded as follows: "Mr. Boone: (continuing) They charge a premium for insurance policies. Like the insurance

policies, they charge a premium for writing this bond. Now there is a liability; they don't want to pay. This matter of bonding companies, whenever they write business like this, there is a calculated risk. They must assume that some contractor here and there is going to make a mistake, and they are going to have to pay. That's what they get the premium for. That's the same thing you pay the premiums for when you buy a health and accident policy—that somebody is going to get hurt or sick.''

Counsel for plaintiff was warranted in pointing out to the jury that the defendant company was paid a surety and assumed the obligations as such. The statement did not transcend proper argument to the jury. In this case, moreover, the argument was proper because invited by the argument of counsel for defendants. In the questioning of the jury it was stated by counsel for defendant company that the bonding company was sitting in the back seat. Likewise counsel for defendant Hunt in his argument to the jury stated that defendant Hunt had agreed to indemnify the bonding company for any amounts which it is required to pay to plaintiff and that Hunt was primarily concerned. The arguments complained of were proper to counteract the effect of the statements of defendants' counsel to the effect that the bonding company was a sort of bystander or only a nominal defendant.

Finding no reversible error in the record the judgment is affirmed.

MR. CHIEF JUSTICE ADAIR and ASSOCIATE JUSTICES BOTTOMLY, FREEBOURN and ANDERSON, concur.